14658

OSWALD v. LAWTON ET AL.

(196 S. E., 535)

*Messrs. Searson & Searson,* for appellant,

*Messrs. C. Birnie Johnson* and *Boulware & Bowden,* for respondents,

April 5, 1938.

The opinion of the Court was delivered by Mr. Justice Bonham.

January 20, 1927, the Allendale Bank was placed in the hands of the State Bank Examiner for a time limited under the statute. While it was thus under the control of the State Bank Examiner, steps were taken looking toward the re-opening of the bank. The depositors instituted a movement by which they agreed to write off, or relieve the bank of liability for, 50 per cent. of each respective deposit. This agreement was approved by the State Bank Examiner and duly signed by the depositors. A meeting of the stockholders was held, at which the State Bank Examiner was present. The agreement of the depositors, above referred to, was under discussion. The bank examiner stated that, inasmuch as the depositors had eliminated from the liabilities of the bank 50 per cent. of their respective deposits, he would permit the bank to reopen upon the sole condition that the stockholders raise a fund of $15,000.00, which was 50 per cent. of the capital stock of the bank, which sum should constitute assets of the bank. At the meeting of stockholders to which this proposition was submitted, a majority of the stockholders was present, including this plaintiff and D. Sams, the testate of the defendants.

This action is brought to compel the executors of the will of D. Sams, who died in 1932, to pay to the plaintiff in this action the sum of $2,000.00, and interest thereon, the legal liability for which payment arises in this wise, according to the allegations of the complaint.

It is alleged that at this meeting where the ultimatum of the bank examiner was announced, to the effect that the stockholders should raise the sum of $15,000.00 to meet and offset the agreement of the depositors to write off 50 per cent. of their respective deposits. J. L. Oswald stated that he

would advance the sum necessary to raise the amount of $15,000.00, if any of those present were unable to pay the money at that time.

Out of that meeting arises this controversy and lawsuit.

The complaint alleges that D. Sams was present at this meeting, heard the announcement of the State Bank Examiner of what it was necessary to do to reopen the bank, heard the proposition of J. L. Oswald that he would advance the money for any one not then ready to pay his proportion, the advance to be repaid when all litigations relating to the bank were ended. Plaintiff alleges that D. Sams acquiesced in the plan  proposed; that the plaintiff, in pursuance of such plan, paid for D. Sams the sum of $2,000.00, 50 per cent. of the par value of D. Sams' holding of the capital stock of the bank. The allegation of the complaint is that D. Sams refused to pay said money so advanced for his benefit, and that the defendants, as the executors of his will, likewise refuse to pay it. They deny liability.

The case was heard by Judge Bellinger and a jury, and resulted in a verdict for the defendants.

The plaintiff appeals upon nine exceptions, and the respondents move to sustain the judgment on two grounds.

We shall not consider the exceptions made by the plaintiff *seriatim,* nor chronologically, but all of them will be included in the final judgment of the Court.

Since the case must go back for retrial, we shall briefly state the grounds upon which we hold that the judgment below should be reversed, and leave untouched, as far as possible, other questions concerned in the retrial.

The cardinal issues for our consideration are made by the allegations of the complaint that D. Sams was present at the stockholders' meeting, where was heard the ultimatum of the State Bank Examiner that the stockholders should raise in cash the sum of $15,000.00 as a condition precedent to the consent of the State Bank Examiner that the bank be reopened, and that he acquiesced in the acceptance by the stockholders of this condition of the bank examiner; that he heard

the proposal by J. L. Oswald that he would advance the money to meet this liability for those not ready to pay it then, and acquiesced in it; that Oswald paid the sum of $2,-000.00 for D. Sams and it went to pay the liability of Sams as stockholder, to that amount.

Here is the crux of the case. Did D. Sams acquiesce in the proposition of J. L. Oswald? Sams died in 1932, and the executors of his will were made parties to the suit. They denied liability.

When J. L. Oswald was on the witness stand, he was asked for whose benefit he deposited in the bank the sum of $13,350.00; whether he had made a statement to the bank examiner in the presence of D. Sams, and what that statement was. It is conceded that these questions related to the meeting of the stockholders at which it was decided to raise from the stockholders $15,000.00 in order to reopen the bank. His Honor said: "He cannot testify to anything along that line." Furthermore, when J. L. Oswald was asked: "Did you make a statement to the Bank Examiner and others who were present at that time?" the following ensued:

"Mr. Boulware: I object.

"The Court: Others were present than Mr. Sams.

"Mr. Searson: It has been testified that he was present.

"The Court: Then I rule that it is not admissible."

W. B. Warren and W. I. Johns had testified that they were at the meeting of these stockholders; that when Warren heard J. L. Oswald's offer to put up the money for those who didn't then have it, and stated that it was to be paid when the lawsuits were all ended, he (Warren), testified that he asked D. Sams "What about it?" and Sams answered, "It is agreeable with you all and it is agreeable with me." When it was sought to prove by Mr. Oswald that he heard what Mr. Sams said, which showed his acquiescence in Mr. Oswald's proposal, he was not allowed to testify to the fact that he heard the conversation between Warren and Sams, because, as the Court held, it would be obnoxious to

Section 692 of the Code. The provisions of that section are to this effect:

"A party to an action or special proceeding in any and all courts, and before any and all officers and persons acting judicially, may be examined as a witness on his own behalf, or in behalf of any other party, conditionally, on commission, and upon the trial or hearing in the case, in the same manner and subject to the same rules of examination as any other witness: Provided, however, That no party to the action or proceeding, nor any person who has a legal or equitable interest which may be affected by the event of the action or proceeding, nor any person who, previous to such examination, has had such an interest, however the same may have been transferred to, or come to the party to the action or proceeding, nor any assignor of anything in controversy in the action, shall be examined in regard ·to any transaction or communication between such witness and a person at the time of such examination, deceased, insane, or lunatic, as a witness against a party then prosecuting or defending the action as executor, administrator, heir-at-law, next to kin, assignee, legatee, devisee, or survivor of such deceased person, or as assignee or committee of such insane person or lunatic, when· such examination, or any judgment or determination in such action or proceeding, can in any manner affect the interest of such witness or the interest previously owned or represented by him. But when such executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, survivor, or committee, shall be examined on his own behalf in regard to such transaction or communication or the testimony of such deceased or insane person or lunatic, in regard to such transaction or communication (however the same may have been perpetuated or made competent), shall be given in evidence on the trial or hearing in behalf of such executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, survivor, or committee, then all other persons not otherwise rendered incompetent shall be made competent witnesses in relation to such transaction or com-

munication on said trial or hearing. Nothing contained in Section 700 of this Code of Procedure shall be held or construed to effect or restrain the operation of this section."

We think the Court erred in excluding the testimony of Mr. Oswald that he heard what passed between Warren and Sams. That was not a transaction between Oswald and Sams, but one between Oswald and the State Bank Examiner; nor was it a communication or conversation between Oswald and Sams. It was a communication addressed to the whole body of stockholders. Sams' reaction thereto and acquiescence therein was addressed to Warren and heard by Oswald. Why should he not be allowed to testify to it?

In the case of *Sloan v. Hunter,* 56 S. C., 385, 390, 34 S. E., 658, 659, 879, 76 Am. St. Rep., 551, this was said: "We are of opinion that, since it does not appear that the witness was testifying as to a transaction or communication between the witness and the deceased, but was [testifying] as to a transaction or communication between the deceased and another person, her testimony is not to be excluded under section 400." Citing *McLaurin v. Wilson,* 16 S. C., 402; *Norris v. Clinkscales,* 47 S. C. [488], 492 [25 S. E., 797].

There are other authorities to the same effect.

We are of opinion that the Court erred in holding that the action was outlawed by the statute of frauds. Code 1932, § 7044. His Honor charged the jury: "That under the Statute of Frauds of this State if an agreement is not to be performed within the space of one year it is not binding unless it is in writing."

The uncontradicted evidence is that the time for the performance of the contract was uncertain. It was to be performed when all the suits in relation to the bank were ended.

In the case of *Walker v. Wilmington Railroad Company,* 26 S. C., 80, 88, 1 S. E., 366, 370, this occurs: "It only remains to consider the question * * * whether the contract is void, under the statute of frauds, as being an agreement 'that is not to be performed within the space of one

year from the making thereof.' The proper construction of these words just quoted from the statute has been the subject of consideration in several cases in this state. In *Thompson v. Gordon,* 3 Strob. [196], 199, they are declared to mean 'an agreement not to be performed in the space of a year, and expressly so stipulated. A contingency is not within the statute. It must appear, within the agreement, that it is not to be performed until after the year, to make a note in writing necessary.' So it is said by Johnson, Ch., to be well settled, 'that, when the agreement is to be performed in a contingency which may or may not happen within the year, a note in writing is not necessary.' "

The portion of the charge above quoted can have no application to this case because there can be no doubt that the time of the performance of the contract was uncertain; it depended on a contingency. The charge was hurtful to the plaintiff.

His Honor charged the jury as follows: "This action was commenced on December 16, 1935, so six years behind that would be December 18, 1929; if that debt became due and owing six years prior to December 18, 1935, it would be barred by the statute of limitations."

We find nothing in the record which warrants the suggestion by the Court that the debt became due and payable December 18, 1929. The testimony is that it was to become due and payable when all the suits against the bank were ended. This did not occur until 1935.

However, if his Honor was correct in assuming that the debt became due on December 18, 1929, he was still in error in charging that the action which was begun on December 18, 1935, was barred by the statute of limitations. Code 1932, § 388. It is an action against the executors of the will of D. Sams. By statutory provision Code 1932, § 418, such represesntatives are exempt from suit for the space of one year after the death of the testator, and the plaintiff was protected against the bar of the statute of limitations until December 18, 1936.

Inasmuch as the case must go back, we prefer not to discuss other questions made by the exceptions.

We think the additional grounds submitted by respondents for sustaining the judgment are disposed of by what we have said, adversely to the respondents' contentions.

The judgment below is reversed and the case remanded for new trial.

Mr. Chief Justice Stabler and Messrs. Justices Baker and Fishburne concur

Mr. Justice Carter did not participate on account of illness.