## 6913

### GOLDSMITH v. COXE.

CONTRACT—BROKER.—Where two tenants in common make a real estate broker their agent with exclusive right to sell the common property, and the other tenants deal with him as their agent and recognize his right to commissions in case of sale and permit him to expend considerable labor and time in the effort to sell the property on the faith of the agency, and finally all of them, without revoking his agency and while he was trying to sell, sell the property to one with whom he had been negotiating, the broker is entitled to his commissions.

Before HYDRICK, J., Greenville, November, 1907. Reversed.

Action by Wm. Goldsmith, Jr., against Joseph C. Coxe, Franklin Coxe, Jr., Eleanor C. Gibson, Tench C. Coxe, and Jno. C. Mills, as trustee of S. A. Croft. From order granting nonsuit, plaintiff appeals.

*Mr. Jos. A. McCullough,* for appellant, cites: *As to right to commissions:* 19 Cyc., 264; 23 Ency., 900, 913, 914; 22 Ency., 89; 80 Pac., 808; 41 S. E., 42; 44 S. C., 248; 4 Ency., 979, 980; 49 Atl., 462: 13 S. W., 420; 5 Current L., 450; 110 N. W., 65; 80 S. W., 687. *Defendants cannot defeat right to commissions by making sale themselves:* 41 S. E., 42; 13 S. W., 419; 14 S. W., 256; 51 N. Y., 124; 32 Atl., 363; 36 Conn., 136; 42 Atl., 667; 4 Ency., 977; 44 L. R. A., 321; 78 N. W., 498; 17 S. W., 45; 88 S. W., 157, 963; 20 N. W., 10.

*Messrs. Sirrine & Charles,* contra. No citations.

May 18, 1908. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendants in December, 1906, sold a lot of land on North Main street, in the city of Greenville, which they owned as tenants in common, for the

sum of twenty thousand dollars. After the sale, the plain-
tiff, a real estate broker, brought this action to recover one
thousand dollars commissions, alleged to be due him on the
sale. The facts alleged in the complaint on which the action
depends, shortly stated, are these: The placing of the prop-
erty by the defendants in the hands of the plaintiff, as their
agent, to negotiate a sale for them on agreement to pay him
a commission of five per cent. in case he should succeed; the
sale of the property by the defendants for twenty thousand
dollars to a purchaser procured by the efforts of the plaintiff;
the expenditure by the plaintiff of time and labor in the
employment so undertaken by him for the defendants, and
service to the defendants in the time and labor so expended,
reasonably worth five per cent. of the sum for which the land
was sold.

The appeal is from an order of nonsuit, made on the
ground that the evidence failed to show the plaintiff had any
contract with defendants for the exclusive right to sell the
property, or for payment to him of a commission on any
sale made by the defendants themselves.

The evidence is largely documentary. It begins with the
appointment by the defendants, Franklin Coxe, Jr., Joseph
C. Coxe, and Eleanor Minnegerode, now Eleanor Gibson, of
Julius Smith as their agent for the management of this and
other property. This appointment was in these words: "We
the three heirs of Tench C. Coxe (deceased), wish and ask
Mr. Julius Smith, of Greenville, S. C., to manage and take
charge of our property in Greenville, S. C., and to have full
and undivided control of the same; to sell and rent subject
to heirs' approval and manage to the best of his ability for
the benefit of said heirs, and also to get in his possession all
moneys collected since (Mr. Donaldson, T. Q.) has had
charge of same derived from rents of said property."

Smith accepted the appointment, and thus made it a bind-
ing agreement.

When the contract was made, the parties who signed it
were supposed to be the exclusive owners of the property,

but it was subsequently discovered that Francis S. Coxe, as executor of Frank Coxe, deceased, had or controlled a one-third interest in the property.

Clearly the "full and undivided control" was to enable Smith to control the property exclusively as agent or broker for the purpose of selling and renting, subject to the approval of the heirs of Tench C. Coxe. The plaintiff, Goldsmith, at this time, or soon afterwards, was a partner of Smith, but it does not affirmatively appear that he had any interest as a partner in the contract at its inception. Smith managed the property, and made efforts to sell it under the agreement until his death, on 12th July, 1903.

In answer to Goldsmith's letter, giving notice of Smith's death, and expressing his desire to *continue* to look after the property for the owners, Joseph C. Coxe, Franklin Coxe, Jr., and Francis S. Coxe, executor of Frank Coxe, deceased, wrote to Goldsmith agreeing to *continue* him as their agent in the place of Smith; Joseph C. Coxe and Franklin Coxe, Jr., being parties to the contract with Smith, and, therefore, knowing its terms, their letters cannot be construed to mean anything less than a substitution of Goldsmith for Smith, and an agreement that Goldsmith should have the same exclusive control, as their broker or agent for the management and sale of the property, subject to their approval. Thereafter, voluminous correspondence was carried on between Goldsmith and Franklin Coxe, Jr., and Joseph C. Coxe, in relation to the disposition of the property. This correspondence and Goldsmith's evidence show he was making efforts to sell all the property, yet at no time was there any attempt made by Joseph C. Coxe, or Franklin Coxe, Jr., to put an end to his exclusive agency for the management and sale; and the contract for such exclusive agency was in full force when the sale was actually made. As to these two parties, therefore, it seems to us clear that the Circuit Judge was in error in holding there was no proof of a contract with plaintiff of exclusive agency for the sale of the property.

As to the other parties in interest, Mrs. Gibson and Francis S. Coxe, executor, we think there is no evidence of exclusive agency for sale conferred on Goldsmith. It is true Francis S. Coxe, executor, in answer to Goldsmith's letter, wrote to him asking him to continue to look after the management and disposition of the property as Smith had done, but there is nothing to show that Francis S. Coxe, executor, knew that Smith had a contract of exclusive agency for the sale. Mrs. Gibson also wrote to Goldsmith, acknowledging receipt of a letter from him, saying she had been trying to get some one to act in her place "as regards decisions about the Tench Coxe property," and telling him to apply to Tench Coxe and Francis Coxe if he received an advantageous offer to purchase. But there is no evidence from Mrs. Gibson's correspondence, or otherwise, that she ever agreed that Goldsmith should succeed to the rights she had conferred on Smith, and so have exclusive charge of the property, as her broker, for its sale.

, There being no evidence of exclusive agency for sale conferred by Francis S. Coxe, executor, or Mrs. Gibson, it becomes necessary to inquire whether there was any evidence that these parties, along with Franklin Coxe, Jr., and Joseph G. Coxe, employed Goldsmith as their broker, to sell the property; and whether he was instrumental in bringing about the negotiations with the purchaser, which resulted in a sale by the parties themselves. These questions must be answered in the affirmative. As we have seen, all the parties, except Mrs. Gibson, expressly agreed to and recognized his agency. There is evidence that all of them, including Mrs. Gibson, left the property to be managed by him, received accountings from him, allowed him to collect rents, pay taxes and in all respects have general charge of it.

These transactions continued after Mr. Beaty became the representative of Mrs. Gibson; and Goldsmith testified, when he was corresponding with the other parties about prices and about his efforts to effect a sale, he conferred in person with Mr. Beaty, acting for Mrs. Gibson, with respect

to prices.    What is still more significant, he actually negotiated a sale of a part of the property, and received from all of the parties concerned commissions thereon.

On the 6th March, 1906, when plaintiff wrote to Francis S. Coxe, Joseph C. Coxe and Franklin Coxe, Jr., stating an offer he had for the property, he said, "of course my commissions will come out of the amount the place sells for." In their replies declining the offer and stating a higher price, there was no demur to the claim of commissions in case of sale.    Again on 23d November, 1906, Francis S. Coxe, in giving the plaintiff a price on the property, recognized his right to five per cent. commissions.  All the parties in interest authorized the plaintiff to give an option on the property in their behalf for sixty days.    After the expiration of this option, the plaintiff continued his efforts to sell the property to W. W. Burgess and others, who subsequently purchased for a hotel site.    The testimony of Burgess was to the effect that there was an intermission in the negotiations, and when at length he saw a good prospect of doing something definite about the purchase of the property for a hotel site, he went to Tench C. Coxe, who, it seems, had come in some way to represent the one-third interest formerly represented by Francis C. Coxe, instead of to Goldsmith, to avoid the delay of correspondence in agreeing with all the parties through Goldsmith.    This interview with Tench C. Coxe led to the sale of the property to Burgess and others for twenty thousand dollars.

Even after this interview, Goldsmith wrote to the parties asking permission to make a sale at a price named in his letter, and received a reply from Tench C. Coxe, as trustee, saying his brother had given an option on the property, and asking a week or ten days to give a definite answer to the proposition made through Goldsmith.

Viewing the whole correspondence in the light of the parol testimony, the evidence warrants these inferences: That Goldsmith was made the agent for two of the parties with the exclusive right to sell, and that the others through-

out dealt with him as their agent, recognized his right to commissions, allowed him to expend considerable labor and time in the effort to sell the property on the faith of his agency; and finally, all of them, without revoking his agency and while he was trying to sell, sold the property to a party with whom he had been negotiating. These inferences may, of course, fade away before the evidence for the defense, but on the motion for nonsuit, we are to consider whether they are sufficient to sustain a verdict for commissions on the sale.

As to the right under the evidence to recover from Franklin Coxe, Jr., and Joseph C. Coxe, commissions on their share of the purchase money, there can be no doubt, for, as we have shown, the plaintiff had the exclusive control of the property as far as they could confer it for the purpose of sale; this control had never been withdrawn and the plaintiff was making actual efforts to sell when the owners sold.

The question is more difficult as to the other parties. In *Mordecai* v. *Jacobi,* 12 Rich., 547, slaves were placed with a broker to sell for a commission of two and one-half per cent., and afterwards the owner, without notice to the broker, effected a sale himself. It was held the broker was not entitled to commissions. The rule in that case is recognized and applied in *McClave* v. *Paine,* 49 N. Y., 561, 10 Am. Rep, 431, and many other cases. But *Mordecai* v. *Jacobi* is not controlling in this case, because there no negotiation between the purchaser and the broker was shown, and the broker had performed no service whatever looking towards a sale.

There are no cases in this State bearing on the questions here presented. But the rule of reason, which seems to be supported by practically all the authorities on the subject, is that the broker is entitled to his commissions, if during the continuance of his agency he is the efficient or procuring cause of the sale, though the actual agreement for the sale is made by the owner without the aid of the broker; and the broker will be regarded the procuring cause if his

intervention is the foundation upon which the negotiation resulting in the sale is begun. *Hoadley* v. *Savings Bank,* 71 Conn., 599, 44 L. R. A., 336, note; *Scott* v. *Patterson* (Ark), 13 S. W., 419; *Reid* v. *McNerny* (Iowa), 103 N. W., 1001; *Salle* v. *McMurry* (Mo.), 88 S. W., 157; *State* v. *Wescoat* (N. J.), 49 Atl., 462; *Smith* v. *Truitt* (Mo.), 80 S. W., 686; 23 A. & E. Enc., 910; 93 Am. Dec., note, 176.

The evidence here was, that the plaintiff advertised the property in the city of Greenville, where the purchaser resided; that he brought the property to the attention of the president of the Board of Trade, and negotiated with Burgess and others as the officers of that body for the sale; that there was a lull in the negotiations, and a few months afterwards the sale was made by the owners to the same persons acting for, or, at the instance of, the Board of Trade. This evidence was certainly sufficient to send the case to the jury on the issue as to whether the plaintiff was the efficient or procuring cause of the sale.

We express no opinion as to the rate of commission for the sale, as that matter was not reached and, therefore, was not passed on by the Circuit Court.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and the cause remanded to that Court for a new trial.