223 S.C. 88 (1953)
74 S.E.2d 425
HOBBS
v.
HUDGENS ET AL.
16712
Supreme Court of South Carolina.
February 4, 1953.
*89 Messrs. Carlisle, Brown & Carlisle, of Spartanburg, and Love, Thornton & Blythe, of Greenville, for Appellant.
*90 Messrs. Thos. B. Butler, of Spartanburg, and J.D. Todd, Jr., of Greenville, for Respondents.
*91 The following is the order of Judge Brailsford:
In this action plaintiff seeks to recover from defendants, as executors of the last will and testament of Edwin Collins, deceased, on an implied contract for commissions in the amount of $7,800.00, allegedly due him for services as a broker in connection with a sale by the executors of a mercantile business in Greer, South Carolina. The case came on for trial before me as presiding judge and a jury at the September term of the Court of Common Pleas for Greenville County and resulted in a verdict for the plaintiff in the sum of $2,580.00.
The defendants made timely motions for a nonsuit and directed verdict. I reserved my ruling on the motion for a directed verdict and the matter is now before me on defendants' motion for judgment notwithstanding the verdict.
Defendants' testator, Edwin Collins, died in 1949, leaving in effect his will upon which ancillary administration was had in Greenville County. Among the assets of the estate was a mercantile business in Greer, Greenville County, South Carolina. The will appointed T.K. Hudgens, the brother of testator's widow, and Harold A. Collins, the brother of the deceased, as executors. Both qualified.
The chief beneficiary under the will was Mrs. Mary H. Collins, the wife of Edwin Collins. The will provided:
"It is my will that my executors named below shall continue the operation of my mercantile businesses in Greer and Walhalla, South Carolina, from the time of their qualification until they have completed administration of my estate, unless in the meantime my wife shall request them in writing to discontinue said operations and sell and liquidate the said businesses, in which event they may sell at a private sale with her written consent. Should they continue the operation of the same, then it is my will that they turn the same over to my wife as going businesses upon the completion of the administration of my estate."
*92 In the light most favorable to plaintiff the substance of the testimony as to the sale on which commissions are claimed was as follows:
Early in 1950, the defendant Hudgens requested plaintiff to ascertain whether one John Graham, an operator of stores of similar type, was interested in purchasing those belonging to the estate. Plaintiff was admonished not to shop the stores around and not to discuss them with anyone except Graham. At his request, he was, however, given permission to talk with a Mr. Tinsley, an associate of Graham, if the latter was not interested. Plaintiff was selected for this mission because Hudgens knew that he had acted for Graham in other transactions.
Prior to this Mrs. Collins had told her brother that she was interested in selling the stores, but neither she nor the coexecutor knew anything about the request made of plaintiff.
Shortly thereafter, plaintiff reported back to Hudgens that neither Graham nor Tinsley was interested. He and his counsel concede that this report terminated such agency as arose from his original conversation with Hudgens. Consequently any right to recover on an implied contract must depend on subsequent events.
On February 6, 1950, which was shortly after the report on Graham's lack of interest had been made, plaintiff received an unsolicited telephone call from a Mr. E.B. Kimbrell of Forest City, North Carolina.
Mr. Kimbrell told plaintiff that he was interested in the Collins Stores and that he understood plaintiff to be the proper person to get in touch with about them, or words to that effect. Plaintiff replied that he had no authority in the matter but that he would try to get authority and call him back.
Plaintiff then called Mr. Hudgens and, according to plaintiff's testimony, related the substance of this conversation to him. Mr. Hudgens told plaintiff that he would be glad to *93 see Mr. Kimbrell the next day. Plaintiff arranged an appointment with Kimbrell and accompanied him to Mr. Hudgens' office, a few blocks from his own, on the day following the telephone calls.
Plaintiff sat in on the conference between Hudgens and Kimbrell but did not participate in it. He had no further connection with the transaction, except that after leaving Hudgens' office he called back over the telephone and requested permission to take Mr. Kimbrell to visit the stores, which was refused. However, Mr. Kimbrell did visit the stores, posing as a customer.
Mr. Kimbrell was a stockholder and officer of a mercantile business in Forest City, North Carolina, known as Peeples-Kimbrell Company. The Peeples Chain also owned a number of other stores with various other associates, in which Kimbrell had no interest. What Mr. Kimbrell had in mind was to interest the Peeples Chain in the acquisition of the Collins Stores with him. It happened that the Mr. Peeples, who would have to approve the proposed purchase, was in Mexico at the time of Mr. Kimbrell's visit to Spartanburg. Mr. Kimbrell so advised Mr. Hudgens on his first visit and requested him not to sell the stores until Mr. Peeples should return.
Later in February, after making an appointment with Mr. Hudgens, Mr. Kimbrell returned to Spartanburg with Mr. Peeples, and negotiations between the parties, without any participation by plaintiff, culminated in a sale of the Greer Store to Peeples-Kimbrell Company on March 1, 1950. The consideration was $48,000.00 for the stock of goods, plus compensation for certain lease-hold improvements at the rate of $200.00 per month, which will aggregate $28,000.00 if continued for the remainder of the Collins lease, which lease, however, according to the testimony the purchaser has not assumed.
Plaintiff did nothing to further the negotiations or to promote the sale. He did not even keep in touch with the progress of the negotiations. He never met the Mr. Peeples *94 who was the only one authorized to act in the matter for the Peeples Chain. Nor did he know that Peeples-Kimbrell Company had purchased the store until sometime after the sale had been closed.
In short, plaintiff does not claim to have made the sale. He does claim that his introduction of Mr. Kimbrell was its procuring cause and that since this introduction was either requested or accepted by Mr. Hudgens, knowing plaintiff to be a real estate broker, an implied contract to pay him commissions if a sale should be consummated arose.
The real question is whether the facts here are sufficient to support these conclusions on the part of plaintiff.
He contends that they are under the rule adopted in Goldsmith v. Coxe, 80 S.C. 341, 61 S.E. 555, 557:
"There are no cases in this state bearing on the questions here presented. But the rule of reason which seems to be supported by practically all the authorities on the subject is that the broker is entitled to his commissions, if, during the continuance of his agency, he is the efficient or procuring cause of the sale, though the actual agreement for the sale is made by the owner without the aid of the broker; and the broker will be regarded the procuring cause if his intervention is the foundation upon which the negotiation resulting in the sale is begun."
The evidence in the Goldsmith case was susceptible of these inferences: That the plaintiff was employed by the owners to sell the property; that pursuant to this agency he advertised it for sale; that he brought the property to the attention of the ultimate purchasers and negotiated with them; that after a lull in the negotiations and without termination of plaintiff's agency, the owners sold the property to the same persons with whom he had negotiated.
These facts aptly illustrate the salutary purpose of the rule; which is to prevent an owner from taking advantage of the efforts of a broker, whom he has engaged as selling *95 agent, and yet defeat his right to commissions by dealing directly with the prospective purchaser produced by him.
The facts in this case do not fit either the rule or the reason for it.
It is interesting to observe what plaintiff apparently thought it necessary to allege in order to state a cause of action. In substance:
That plaintiff, a broker, was approached by one of the defendants about selling the property; that thereafter the defendants accepted his services as selling agent, in accordance with which he interviewed prospective purchasers and finally brought together the defendants and a purchaser to whom the property was sold; that the sale was the result of the services which he rendered as selling agent, as the procuring cause thereof.
It is conceded that whatever agency was created by the request that plaintiff contact Graham had terminated prior to February 6, 1950, the date of Kimbrell's telephone call. Therefore any inference from the allegations of the complaint that the defendant Hudgens employed plaintiff to sell the property or obtain a purchaser goes out of the case. Nor is there any testimony to support the allegation that plaintiff interviewed prospective purchasers, much less that he did so as defendants' selling agent.
The allegation that the sale was the result of services rendered by plaintiff as selling agent simply disregards the fact that plaintiff did nothing to bring the property to the attention of the ultimate purchaser or to arouse or stimulate his interest in it.
The fortuitous circumstance that Mr. Kimbrell, who was in the market for this type of business, learned that the Collins Stores might be purchased is what really brought these parties together. Plaintiff's minor role in the transaction arose from what he himself says was Mr. Kimbrell's mistake in believing that he had been employed as defendants' agent to effect a sale of the business.
*96 Under the rule in the Goldsmith case the broker must not only show that his efforts were procuring cause of the sale but must further show that his intervention was during the continuance of an agency to sell or find a purchaser.
The element of agency or employment is sought to be inferred from the fact Mr. Hudgens agreed in advance to accept the introduction to Kimbrell which was voluntarily offered to him by plaintiff.
As I understand counsel, they concede that if plaintiff had taken Kimbrell to Hudgens' office without the previous telephone call there would be no case. If plaintiff understood and intended this call to make such a vital difference in his status in the transaction, it was certainly incumbent on him to make his intention known. But as I view the evidence, he said nothing calculated to put Mr. Hudgens on notice that he would consider himself employed as broker in the transaction and entitled to commissions if the introduction were accepted.
Mr. Hudgens knew that Mr. Kimbrell had called plaintiff instead of him or his coexecutor by accident. If he had realized that plaintiff was bidding for commissions, it would have been his duty as a fiduciary to have protected his trust by making his own appointment or waiting for Kimbrell to do so.
If any agency by implication was raised, it was limited to making an introduction, and did not extend to making a sale or finding a purchaser. Perhaps reasonable compensation for the performance of this mission might be recoverable, but the action is for commissions on the sale and the jury awarded commissions. The verdict can be sustained only on the theory that the evidence is susceptible of a reasonable inference that plaintiff is entitled to recover commissions under the doctrine adopted by our Court in the Goldsmith case. In other words, that a brokerage contract arose by implication.
*97 Furthermore, the telephone conversation could not result in such an agency because Hudgens had no authority to sell the property or to employ a broker, or to contract to pay broker's commissions, without the concurrence of his coexecutor and of testator's widow, who was the real party in interest, and had the final word as to whether the business should be sold and on what terms, which was known to plaintiff. All of the testimony is to the effect that neither of these parties knew that plaintiff had participated in any way in the transaction until after the sale had been closed.
But perhaps the clearest, and certainly the most satisfactory ground for denying recovery, because it goes squarely to the merits of whether plaintiff has earned his verdict, is found in an amplification of the rule relied on by plaintiff, which is thus expressed in Restatement of the Law of Agency, Section 448, page 1052:
"It is, however, necessary that the customer's attention should have been called to the subject matter or his attention stimulated by the broker, through means intended by the broker to cause this result; if the customer knows of the opportunity and has made up his mind to negotiate with the principal, the broker does not earn his commission by merely introducing him, unless the contract of employment so specifically provides. Likewise, if the customer indirectly learns of the opportunity by means not calculated or intended by the broker to accomplish this, the broker is not the effective cause of the ensuing transaction, as where the person to whom the broker speaks is not interested, but in a casual conversation mentions it to a friend who subsequently purchases."
See also 8 American Jurisprudence 1088, Brokers, Section 172, particularly note 10.
The above quotation fits the facts here so aptly that every part of it is significant, as will be seen.
Mr. Kimbrell's attention was not called to the subject matter or his attention stimulated by plaintiff through means intended by plaintiff to cause this result; *98 Mr. Kimbrell knew of the opportunity and had made up his mind to negotiate, and plaintiff did not earn a commission by merely introducing him, because he had no contract of employment which so provided. Mr. Kimbrell did learn of the opportunity indirectly, by means not calculated by plaintiff to accomplish this, probably in casual conversation with Mr. Graham or Mr. Tinsley, to whom plaintiff had spoken and who were not interested, or with some one who had learned of it from them.
It follows that defendant's motion for a directed verdict should have been granted because of the insufficiency of the evidence to establish either an implied contract of employment or that plaintiff's services were the procuring cause of the sale, both as a matter of law; and defendant's motion for judgment for the defendants notwithstanding the verdict should be and is granted.
And it is so ordered.
February 4, 1953.
PER CURIAM.
We are of opinion that the order of the trial Judge granting the motion of the defendants-respondents for judgment in their favor, non obstante veredicto, and from which this appeal is taken, should be affirmed.
Affirmed.