*16777*

JOSEPH v. SEARS ROEBUCK & CO.

(77 S. E. (2d) 583)

*Messrs. Price & Poag,* of Greenville, *for Appellant,* 

*Messrs. Hinson, Traxler & Hamer,* of Greenville, *for Respondent,*

September 9, 1953.

OXNER, Justice.

This is an action to recover damages for breach of an alleged oral warranty by appellant with respect to the safety of a pressure cooker sold to respondent. The trial resulted in a verdict for respondent in the sum of $2,500.00. The major question for determination is whether the Court below erred in not granting a motion by appellant for a nonsuit, and later for a directed verdict, upon the ground that the alleged warranty was unenforceable because not in writing as required by the 5th clause of the 4th section of the Statute of Frauds, Section 11-101(5) of the Code of 1952, which provides that no action shall be brought to charge any person upon any oral agreement "that is not to be performed within the space of one year from the making thereof."

Although the record contains the entire testimony taken at the trial, we need only state the facts pertinent to the questions raised by the exceptions. In January, 1949, respondent bought a pressure cooker from appellant for $16.95, which was paid in cash. Among the representations which respondent alleged were made to and relied upon by her at the time of the sale, were that appellant's saleslady stated that said pressure cooker "was safe in every respect" for use in cooking; "that there was no danger whatever" in using it; and that in view of the safety devices thereon, "no explosion was

possible." In support of the foregoing allegations in the complaint, respondent testified that having heard conflicting reports as to the safety of pressure cookers, she specifically inquired whether there was any danger in such a utensil exploding, to which the saleslady replied: "There is no possible danger in these things exploding." She further testified that the saleslady told her that it was impossible for the cooker to "blow up because Sears had this device on it that would go off at 35 lbs. pressure, that there was no way, shape or form for it to explode." She said that she was wholly unfamiliar with the operation of pressure cookers and relied on the foregoing representations and warranties in making the purchase.

Respondent used this utensil rather regularly until November 23, 1950. While cooking dinner on that day, it exploded and as a result, respondent was burned, her stove demolished and the house considerably damaged. No question is raised as to the amount of the verdict.

Appellant strenuously denied ever making to anyone a warranty of the character claimed by respondent and offered testimony to the effect that an explosion of one of its pressure cookers could only result from improper care and use. All conflicts in the testimony have now been resolved by the verdict of the jury in favor of respondent, and we must assume on this appeal that an oral warranty was made as claimed by respondent and through no fault of hers, the utensil exploded within about two years after it was purchased, resulting in damages as found by the jury.

The only question for our determination is whether the oral warranty upon which this action is based is within the 5th provision of the 4th section of the Statute of Frauds. Appellant contends that the statute applies because the alleged warranty was impossible of performance within a year. In support of this contention, appellant offered testimony to the effect that with proper use, one of these pressure cookers would last from ten to fifteen years. However, one of its

witnesses admitted that it was "possible for one to wear out in a year," and another that she had heard of explosions occurring within a year.

The question of whether a warranty as to the quality or condition of a chattel must be in writing when the life of such article ordinarily extends beyond a year is an important one. If appellant's view is accepted, most oral warranties would be unenforceable. Although cases are legion sustaining a recovery of damages for breach of an oral warranty with respect to the condition or quality of chattels sold, no decision has been cited, and we have found none, holding that such warranty was unenforceable because it constituted an oral agreement which was not to be performed within one year from its making. The fact that the Statute of Frauds has never been raised in any of these cases is significant.

General statements to the effect that oral warranties made in connection with the sale of personal property need not be in writing will be found in numerous cases and textbooks. In *Mechem on Sales,* Volume II, Section 1235, it is stated: "In order to constitute an express warranty no particular language is necessary. *It is not required that it shall be in writing,* or be made in specific terms; and it is not at all necessary that the word 'warrant' or 'warranty' shall be used." (Italics ours). Again, in Section 1253, we find: "A warranty, as such, is not required to be in writing. Even though the value of the goods was such as might have brought the contract to sell within the operation of the statute of frauds, the oral warranty will suffice. The defendant may, of course, contend that there was no *sale* because the statute was not complied with; but if there were a valid sale, as where, for example, there has been a delivery and acceptance sufficient to satisfy the statute, it is not necessary for the warranty to be in writing." The following is taken from 77 C. J. S., Sales § 308 (b) : 'It is not essential that a warranty in the sale of chattels be in writing; the contract of warranty may be valid whether

oral or written.'" To the same effect, see 46 Am. Jur., Sales, Section 313; *Distillers Distributing Corporation v. Sherwood Distilling Company*, 4 Cir., 180 F. (2d) 800; *Woolsey v. Zieglar*, 32 Okl. 715, 123 P. 164; *Seale v. Schultz*, Tex. Civ. App., 3 S. W. (2d) 563; *Conkling v. Standard Oil Co.*, 138 Iowa 596, 116 N. W. 822.

The first question which suggests itself is whether a warranty of the character involved in this case constitutes an agreement within the purview of the statute now invoked. Does such an oral warranty constitute a *promise* of some act to be *performed* by the seller within the contemplation of the statute? Or does such a warranty mean that the promisor is not to do any act upon the happening of the event warranted against, but upon such happening liability arises by law without any act to be performed on his part? These are interesting questions which we shall not now undertake to decide. We shall assume that the warranty involved in this case is an agreement of such nature as to be within the contemplation of the statute.

It is well settled that the statute applies only to an agreement which cannot be performed within a year. In *Cline v. Southern Railway Co.*, 110 S. C. 534, 96 S. E. 532, 538, the Court quoted with approval the following from *McPherson v. Cox*, 96 U. S. 404, 416, 24 L. Ed. 746: "In order to make a parol contract void it must be apparent that it was the understanding of the parties that it was not to be performed within a year from the time it was made." In *Weber v. Perry*, 201 S. C. 8, 21 S. E. (2d) 193, 194, the Court said: "There can be no dispute as to the well established principle that the statute applies only to those contracts which are impossible of performance within a year and that a contract on a contingency which may occur within the year need not be supported by a writing." If there is a possibility of performance within a year, the agreement is not within the statute. The fact that performance within a year is highly improbable or not expected by the parties does not bring a contract within the scope of this clause. Accord-

ingly, it has been held that a contract to employ another "for an indefinite period (of time) so long as plaintiff's work was satisfactory" was not within the statute. *Cline v. Southern Railway Co., supra,* 110 S. C. 534, 96 S. E. 532. A similar conclusion has been reached as to an agreement which was construed by the Court as being one to "employ the plaintiff for the rest of his natural life as long as he did his work in a satisfactory manner." *McGehee v. South Carolina Power Co.,* 187 S. C. 79, 196 S. E. 538, 541. Numerous other decisions of this Court illustrating the principles heretofore stated could be cited. There is an interesting review of the English cases in *Warner v. Texas & P. R. Co.,* 164 U. S. 418, 17 S. Ct. 147, 41 L. Ed. 495. Among them was one holding that an oral agreement by which the defendant promised, for one guinea paid, to pay the plaintiff so many at the day of his marriage was not within the statute, although the marriage did not take place within the year. The Court said that marriage might have happened within a year after the agreement. Another English case reviewed held that a promise to pay so much money upon the return of a certain ship, *which ship happened not to return within two years after the promise made,* was not within the statute, "for that by possibility the ship might have returned within a year; and although by accident it happened not to return so soon, yet, they said, that clause of the statute extends only to such promises where, by the express appointment of the party, the thing is not to be performed within a year." Anon., 1 Salk, 280.

It is also uniformly held that the statute does not apply when by the happening of a contingency the defendant may be required to perform his contract within a year. In *Gadsden v. Lance,* McMul. Eq. 87, the Court said: "It is equally well settled that when the agreement is to be performed on a contingency, which may or may not happen within the year, a note in writing is not necessary, unless it appears from the agreement that it was to be performed after the year." To the same effect, see *Thompson*

*v. Gordon,* 3 Strob. 196; *Walker v. Wilmington, C. & A. Railroad Co.,* 26 S. C. 80, 1 S. E. 366; *Oswald v. Lawton,* 187 S. C. 42, 196 S. E. 535. It is on this principle that it has been held that an oral contract of insurance, although extending beyond a period of one year, is not within the statute because the liability of the insurer thereon may occur within the year by the happening of the contingency insured against. 49 Am. Jur., Statute of Frauds, Section 41; Restatement of the Law of Contracts, American Law Institute, Section 198. In *Globe Indemnity Co. v. Cooper Motor Lines,* 206 S. C. 154, 33 S. E. (2d) 405, 406, the Court stated that "an oral contract to insure is not within the statute of frauds, since it may be completely performed within a year upon the happening of a contingency."

The oral warranty in the instant case will now be considered in the light of the foregoing principles. In effect, appellant said to respondent: "The pressure cooker is not dangerous and will not explode. If it does explode, we shall indemnify you or be responsible in damages." The testimony shows that it was possible for the explosion to have occurred within a year. The fact that it did not occur in the instant case until almost two years does not affect the question. If the warranty sued on is within the statute, it would be unenforceable whether the breach occurred the day after the sale or ten years thereafter. We think the warranty was one subject to a contingency which might occur within one year after its making and therefore not within the statute.

The cases relating to oral contracts of insurance are closely analogous. "Ordinarily, a warranty is an agreement to be responsible for all damages that arise from the falsity of a statement or assurance of a fact. In other words, a warranty promises indemnity against defects in an article sold." 46 Am. Jur., Sales, Section 299. In *Stucky v. Clyburn,* Cheves 186, it is stated: "The contract of warranty is an undertaking to indemnify for any injuries sustained by the breach of it." An insurance contract is like-

wise a contract of indemnity. The insurer undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event. Liability on either contract is dependent on a contingent event which may happen within or beyond the year after the making thereof. We do not think the instant case can be distinguished in principle from those upholding the validity of oral contracts of insurance.

It is argued by appellant that its contingent liability under the alleged warranty did not cease when one explosion occurred, but continued for the life of the cooker, which, according to appellant's testimony, extended over a period of ten or fifteen years. On this theory it is claimed that the contract could not be performed within a year. It might be first stated that it is certainly far-fetched to say that the parties contemplated that there might be repeated explosions and a series of injuries resulting therefrom. On the contrary, it is more reasonable to suppose that they thought that an explosion would result in the destruction of the cooker. Moreover, appellant has misconceived the nature of this warranty. It was not one to keep the utensil in repair but to indemnify respondent against loss by explosion. In effect, the warranty was that the cooker would not explode as long as it was used by respondent. If it were for any cause damaged beyond repair, sold or abandoned, or for any other reason respondent ceased to use it, the warranty was at an end. Either of these events could happen within a year. It makes no difference what the normal life of the cooker was, the agreement was to compensate upon the happening of an event which could occur within a year.

Our decisions, in line with the great weight of authority elsewhere, are to the effect that an agreement to be performed on the death of a person is not within the statute because death may occur within a year, although the life expectancy of such person may be for a much longer period. *Thompson v. Gordon, supra,* 3 Strob. 196; 49 Am. Jur., Statute of Frauds, Section 30. Is it reasonable to say that an agreement

to pay upon the death of a young man, in fine physical condition, with a long life expectancy, is not within the statute because his death may occur within a year, but that an agreement to pay upon the explosion of a pressure cooker is within the statute, because its normal life is for a period of ten or fifteen years? Is death more likely to occur within a year than an explosion? Here the explosion occurred within two years, or within a period of time far less than the normal expectancy.

The agreement in the instant case is quite different from that involved in *Jones v. McMichael,* 12 Rich. 176, as well as that before the Court in *Rowland & Sons, Inc., v. Bock,* 150 S. C. 490, 148 S. E. 549. Both of these cases upon which appellant strongly relies are readily distinguishable. In the *Jones case* there was no definite time fixed for performance, but the facts showed that the parties necessarily contemplated that performance would take more than a year. There was no element of contingency involved in the contract. The *Rowland case* involved an alleged oral agreement on the part of the landlord to construct an addition to the rented premises and keep it at all times "in repair and in a safe and suitable condition for the purposes for which said premises were leased." The lease extended over a period of seven years and the agreement to keep in repair was co-extensive with it. The contract there contemplated a continued and repeated course of positive action over a period of years, an altogether different situation from that presented in the instant case.

Appellant expresses great apprehension as to the liability of merchants if it is held that a warranty of this kind can be made orally. But it is doubtful whether the possibility of perjury or fraud is any greater in the case of an oral warranty as to the condition or quality of chattels than that which exists in the case of the many other agreements that can be made orally. Be that as it may, we are not at liberty to enlarge the statute. That is the prerogative of the Legislature.

The learned trial Judge held that the agreement was not within the statute because it had been fully executed on the part of the respondent by payment of the purchase price at the time of sale. This construction may be sound but in view of the fact that we have concluded for other reasons that the statute does not apply, it is not necessary to pass upon the ground advanced by the Court below and we prefer to intimate no opinion thereabout.

The remaining exceptions relate to the charge.

It is contended that the Court erred in mentioning ██ to the jury during the course of the charge that South Carolina followed the rule of the civil law that a sound price warrants a sound commodity. It is said that an implied warranty of this kind had no application to the case and was misleading and confusing.

The Court, in substance, instructed the jury that the burden was upon respondent to prove the alleged oral warranty; that although in South Carolina a sound price warranted a sound article, the plaintiff had not elected to sue upon an implied warranty and could not recover on such theory; that she had elected to proceed upon an express warranty "that this pressure cooker was a safe device and that it would not or could not explode", and "that she's got to prove that the first thing of all and if she doesn't satisfy you of that by the greater weight of the evidence, you needn't go any further in your investigation, you would have to return a verdict in favor of the defendant."

It is difficult to see how appellant was prejudiced by the statement complained of. The error, if any, was harmless. Moreover, under the circumstances the Court was justified in telling the jury that respondent could not recover on the theory of any implied warranty that a sound price warrants a sound article. Such an instruction was helpful in undertaking to present squarely to the jury the issues which they were to determine.

By another exception it is claimed that the Court ■ erred in charging that the Statute of Frauds had no application to the case and that this defense should not be considered. For the reasons heretofore stated, we think this was a correct statement. It was proper for the Court to tell the jury that the defense of the Statute of Frauds contained in the answer had been eliminated.

The remaining exception to the charge can better ■ be understood by this preliminary statement. Appellant alleged that each sale of a pressure cooker was accompanied by a printed book of instructions, which contained the only warranty or guaranty made to a purchaser. The "guarantee" contained in this booklet purports to limit appellant's liability for defects. Respondent denied that any such booklet was given to her or called to her attention. The Court charged the jury that any such warranty or limitation of liability "would have had to have been called to the attention of the purchaser at the time of the purchase and the purchase would have had to have been made with the knowledge of that for it to have been sold upon a written warranty." This instruction was substantially in accord with the rule stated in *Stevenson v. B. B. Kirkland Seed Co.,* 176 S. C. 345, 180 S. E. 197, and *Reliance Varnish Co. v. Mullins Lumber Co.,* 213 S. C. 84, 48 S. E. (2d) 653. There is no merit in this exception.

All exceptions are overruled and the judgment below affirmed.

FISHBURNE, STUKES and TAYLOR, JJ., concur.

BAKER, C. J., dissents.

BAKER, Chief Justice (dissenting.)

On Thanksgiving morning, November 30, 1950, the respondent, a young housewife in Greenville, South Carolina, was cooking her dinner. In the preparation of this meal, she undertook to make use of a "Maid of Honor" pressure cooker to cook a hen. She had purchased this cooking utensil from appellant's store in Greenville in January, 1949, and

had successfully used the cooker frequently since the date of its purchase and the date first above mentioned. In the process of cooking the hen, the pressure cooker exploded, resulting in the kitchen and its contents, including her electric range, being ruined, and in part of the contents of the cooker consisting of chicken, grease or liquids being thrown with great force against respondent's back, shoulders and right arm, severely burning her.

The complaint of the respondent, considered in connection with a letter from her counsel to appellant's counsel when the latter served a notice to make the complaint more definite and certain, which letter contained the information when and where the pressure cooker was purchased from the appellant, and that the alleged guaranty or warranty relied upon was an oral one and not in writing, sets forth among other things the aforestated facts. And in addition thereto we quote paragraphs II, III and VIII thereof:

## II

"That the defendant manufactures a pressure cooker or has same manufactured by its agents acting within the scope of their duties and authorities, and the defendant has exclusive selling agency for said pressure cookers. That prior to the times hereinafter mentioned, plaintiff purchased one of said pressure cookers from the defendant, Sears Roebuck & Company, and paid therefore the stipulated price. That defendant, its agents or servants acting within the scope of their duties and authorities, warranted to this plaintiff at the time of making said sale to plaintiff, that said pressure cooker was one of the defendant's, Sears Roebuck & Company, own designs; that the defendant guaranteed it against defects in material and workmanship; that it was safe in every respect for a housewife, cook or servant to use in a kitchen in cooking food, including chicken, various roasts, vegetables, etc. The defendant warranted that the removable pressure guage and safety valve were the defendant's own design and there was no danger whatever in using

said pressure cooker, in that if the steam in the pressure cooker reached thirty-five (35) pounds of pressure, these safety devices opened in order to let the steam out and no explosion was possible with such specially designed devices. The defendant further warranted that the said pressure cooker had been properly tested before the defendant offered it for sale and there could be no possible explosion of the said vessel."

### III

"That said pressure cooker is a highly technical and complicated mechanism, of which defendant had special knowledge or skill, which this plaintiff, as a housewife did not have, and said representations were made by the defendant with the intention that plaintiff rely upon the same in consummating said sale and plaintiff did rely upon same, which induced the purchase and was a part of the consideration."

### VIII

"That plaintiff's injuries and damages hereinabove set forth were caused directly, proximately and as a natural consequence of the breaches of said warranties hereinabove set forth, which warranties were false and untrue, in that said pressure cooker, when used as instructed by the defendant, did explode, resulting in said special damages to plaintiff, which were in the contemplation of the parties at the time of said sale as aforesaid. As a direct, proximate and natural result thereof plaintiff has been damaged in the sum of Twenty Five Thousand and no/100 ($25,000.00) Dollars."

The amended answer of the appellant, for a first defense, denied any allegations of the complaint which directly or indirectly alleged the breach of any warranty made to respondent or that it or its agents or servants made any false or untrue representations in its alleged transaction with the respondent. Admits that it had the exclusive right to sell a pressure cooker bearing the brand "Maid of Honor," but alleges that it had no record of having sold such a cooker to

the respondent. It was further alleged that if such a sale was made to respondent, then it was accompanied by a printed book of instructions, which contained the only warranty or guarantee made to any purchaser of a pressure cooker, which guarantee is printed and signed by the appellant. Denied any knowledge of the alleged explosion except as to such statements as were made to appellant's agent by respondent, and demanded strict proof of all details.

For a second defense, the answer pleaded that the injuries alleged in the complaint resulted solely and proximately from respondent's careless or improper operation of the pressure cooker.

For a third defense, alleged that the warranty or warranties referred to in respondent's complaint are within the Statute of Frauds of South Carolina, Section 7044 of the 1942 Code; Section 11-101, subdiv. 5, Code of 1952.

Issue having been joined, the case came on for trial at the February (1952) term of the Court of Common Pleas for Greenville County, resulting in a verdict for the plaintiff-respondent. Prior to entering into the trial, and on motion of appellant's counsel, the respondent was required to elect if she was suing in tort or on contract, and elected to bottom her action on contract.

The issues raised by this appeal make it unnecessary for us to consider whether there is any testimony tending to prove that the explosion of this pressure cooker was due to something done or omitted to be done by the appellant to comply with its alleged oral warranty that the article was safe for the purpose it was purchased. Ordinarily the mere fact of the explosion would not make out a case for a plaintiff. Such plaintiff would have to go further and show that some specific defect in the article, constituting a breach of the warranty, brought about the explosion, or else it would be necessary for a plaintiff to exclude all such reasonably possible causes therefor such as: disuse, abuse, failure to properly maintain the article, etc.

The action as tried was for damages flowing from a breach of an alleged oral warranty made at the time of the sale, from an explosion of a "Maid of Honor" pressure cooker, purchased by respondent from appellant.

The issues on this appeal are: (1) Was it error for the trial Judge to refuse the motions of the appellant for a non-suit; for a direction of verdict in favor of appellant; for judgment *non obstante,* and failing in that for a new trial, all upon the ground that the alleged oral warranty was a contract within the Statute of Frauds; and (2) Did the trial Judge err in his charge to the jury in the particulars set forth in the exceptions.

The pertinent portion of the Statute of Frauds (Section 7044, Code of 1942, Section 11-101 (5), Code of 1952) reads as follows:

"No action shall be brought whereby:

\* \* \*

"(5) To charge any person upon any agreement that is not to be performed within the space of one year from the making thereof;

"Unless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or some person thereunto by him lawfully authorized."

Respondent testified that in the early part of 1949 (the time was later established to be in January, 1949) she went to the appellant's store in Greenville, S. C., to buy some pots, and naturally went to the pot department, where she was waited upon by the head of the pot department, Mrs. Ruth Fowler, who has been in the Pressure Cooker Department of appellant's store for ten to twelve years. We now quote from respondent's testimony:

"Q. So, what happened then? After you got in the store and went to the pot department? A. After I went back there and I told her what I was looking for, that I was looking for some pots to cook vegetables in; and she showed me this big pot, she showed me this big pressure cooker; and she

told me that I could cook a whole meal in that pressure cooker. She told me I could cook a whole meal in forty-five minutes, within forty-five minutes I could cook a whole meal in it, she talked about that, you know, that was the main thing I needed and I told her I had to work and didn't have much time to do much cooking. And she told me I could cook in forty-five minutes, vegetables, meat and all.

"Q. Did you know anything about a pressure cooker? A. Not a thing. And I said I had heard that they would explode and she told me * * *

"Mr. Price: We object to what she heard.

A. Well, that was what I was telling the lady I bought the pressure cooker from; and I had heard they would explode and I had heard that they wouldn't; and I asked her, 'Are there any danger in these things exploding?' and she said, 'There's no possible danger in these things exploding' and she said there was no way whatever for those things to explode because Sears Roebuck had put these safety devices on it and if it did go over thirty-five •pounds pressure this thing would blow out, that there was no possible way for it to explode and asked if I ever knew anybody with a pot that exploded, 'You know how you hear things.' Then she went into details about how to fix my vegetables, what good it would do, how it would save me time. I had to work and she told me how it would save my time and one thing and another, you know.

Q. Did she tell you how to clean it? A. Yes, she said to wash it in warm soapy water and keep it clean and to be sure this little guage was kept dry, washing it, you know, and that was all there was to it.

Q. Did she tell you how to cook chicken or roast in it? A. Yes, she said to warm the pan and put your chicken in and brown it and you put your water in and you put the lid on.

Q. How do you fix the chicken? A. Well, you ties the legs and the wings down and then you put the top on this pressure cooker.

Q. Did the saleslady seem to know anything about pressure cookers? A. Sure, she was the head of the department.

Q. Did you buy the pressure cooker? A. Yes, sir, and I paid cash for it, Sixteen ($16.95) Ninety-Five.

Q. How did you react to what the lady told you about whether or not it would explode? A. Well, I believed her because she said there was no way for it to explode and she ought to know what she was talking about. She said it had this safety device that would go off at 35 pounds pressure. That it couldn't possibly explode at all.

Q. And you say you believed her? A. I believed her, I relied on her word; I believed the lady because she knew more about it than I did because I never had owned one."

Respondent further testified that at no time was she given an instruction book as to the use of the pressure cooker, but relied entirely upon the verbal instructions given her by Mrs. Fowler, the saleslady; that when this pressure cooker was delivered to her home, if a booklet of instructions was sent along with the cooker, she never saw it or had it called to her attention, but in her use of the cooker had at all times relied entirely on the verbal instructions given her at the time of the purchase; that on the Thanksgiving morning the pressure cooker exploded, she was using it to tenderize a five or six pound hen she was cooking. (The respondent went into details as to manner she had prepared this hen and placed it in the cooker, adding thereto a very small amount of water, put the cooker on the stove, heated it, and then put the lid on.) We quote further from the record:

"Q. Come down here and show us. A. Then this is fixed to let the cold air come up through here and I watched it and it was coming up through there and then I put my little guage on and turned around and went to fixing something * * *

Q. Just a minute. A. When I put the pot on, I put it on at high.

Q. Was the guage out and the hole open at that time? A. Yes. And then when it got to eleven pounds pressure, I

turned around and I cut my stove down to medium, I had found it would hold the pressure better that way.

Q. What pressure would you get it up to? A. Fifteen pounds.

Q. And you say you cut it back down to medium when it reached eleven pounds? A. That's right; and I turned around. I got a little timer on my stove. I was going to tenderize it for about twenty-five minutes. I turned around and started to fix my dressing, and I hadn't been over there, I don't guess, more than five minutes, to stuff the chicken with and this awful noise went off."

The testimony in behalf of the appellant established the fact that the pressure cooker here was a "Maid of Honor" cooker, and that such pressure cooker was sold. exclusively by the appellant. Miss Ruth Fowler (who we assume is the Mrs. Ruth Fowler referred to by respondent), a witness for appellant and identified as the Department manager of the Housewares in appellant's store at Greenville, testified that she was unable to state whether she sold this particular cooker to respondent, but that in the sale of cookers each purchaser was without exception furnished with a book or booklet containing instructions how to use the cooker, and such a book was admitted in evidence; and that the only guarantee which was made in connection with the sale of such cooker was contained in the booklet. We here quote the guarantee contained in booklet:

"Guarantee

"This Cooker was thoroughly tested under pressure before it left the factory. We guarantee each Cooker sold by us to be free from defects in material and workmanship when used according to our directions; our obligation under this guarantee is limited to making good at our factory any defective part or parts thereof which shall, within three months after delivery of such Cooker to the original purchaser be returned to us.

"This guarantee shall not apply to any Cooker which shall have been repaired or altered outside of our factory in any

way so as to affect its stability or reliability, nor which has been subject to misuse, negligence or accidents.

"We do not authorize any person or representative to make any other guarantee or to assume for us any liability in connection with the sale of the Cooker other than those contained herein. Any agreements outside of or contradictory to the foregoing shall be void and of no effect.

"Sears, Roebuck and Co."

Miss Fowler further testified that she had never at any time made any verbal guarantee concerning one of these cookers (and she had sold hundreds of them), nor had she ever made to any purchaser of a pressure cooker a statement that there was no way for it to explode; that she always told them to carefully read the instructions in the book, and that unless an inexperienced person had read the instruction book, such person could not have successfully operated the cooker; that it was her opinion that this pressure cooker, if properly operated and not overloaded, would not explode; that these cookers are constructed out of good substantial material with a safety valve in which there is a nyloid or alloy plug which is supposed to blow out and release the steam if the pressure gets too high; that the instruction book warns against filling the cooker more than half full, that is, overloaded, because the food therein such as rice will swell, and it might get stopped up and explode; that the life of these pressure cookers was ten to fifteen years in accord with the use to which they are subjected, and with the replacement of parts; that she had heard of pressure cookers exploding on numerous occasions, and of them exploding within one year.

A Mr. Blitz, witness for the appellant, testified that he was the buyer of pressure cookers for appellant, and purchased on an average of two hundred thousand a year, and that the average, ordinary life of one of these cookers was ten to fifteen years. On cross-examination he was asked the question: "And these cookers, you know that you have had them explode within a year, isn't that right?" Counsel for

appellant objected "to what they have done," and the trial Judge ruled as follows:

"Strike it out, disregard that Gentlemen. You see, like any other mechanical device, it would depend upon what it did that made it explode. You could take one the day after you bought it and if you stopped it up and didn't let the steam escape it might explode. You would have to go into a trial of those other cases, if you prove that one did explode in a year. I will let you prove that one wore out within a year, if you can."

We further quote from the record immediately following the foregoing ruling:

"Q. Mr. Blitz, of course, the fact that a cooker wears out depends upon the use it is put to would it not? A. Obviously.

Q. And it is possible for one to wear out in a year. A. Dependent upon the previous answer, yes.

Q. And the whole life of these things the answer you gave us awhile ago, is dependent upon various conditions. A. It depends strictly on the care.

Q. And you sell these pots to people without regard to the type of wear they are to have do you not? A. That's right. Anybody that wants to buy them.

"Re-Direct Examination By Mr. Price:

Q. Mr. Blitz, one of these, put to use by the ordinary housewife, what would be your average age as to that? A. Ten to fifteen years.

The Court: What I want to ask is: Regardless of how many hours a day a housewife put it to use, would it burn out on her in a year? A. No, sir.

Q. Or wear out? A. Absolutely not.

Q. I think that's all."

Notwithstanding the ruling of the Court hereinabove set out sustaining the objection to the question asked Blitz if he knew that some of these cookers had exploded within a year, there was no motion to strike from the record the tes-

timony of appellant's witness, Miss Fowler, thereabout and it remained in the record.

It should be related herein that when the pressure cooker in question exploded, the bottom of the cooker blew out, and the remainder of the cooker was apparently intact.

We proceed to a consideration of the legal questions involved. These questions arise upon the appellant's successive (but unsuccessful) motions for a nonsuit, for a direction of verdict, for judgment *non obstante veredicto,* and for a new trial. These motions were based "upon an oral warranty that this pressure cooker would never explode; that the only evidence in the case and the only inference to be drawn from the evidence is that the life of one of these instruments is well beyond a year—from five to fifteen years—therefore, it is impossible of performance within a year; and therefore the Statute of Frauds applies." The Circuit Judge ruled that the transaction in question in this case "was an executed contract and that the Statute of Frauds would not apply."

Upon the denial of the motion for a direction of verdict, the respondent moved to strike out the third defense, which sets up the Statute of Frauds. The record states, on this subject:

"The motion to strike was denied but the third defense was eliminated in submitting the case to the jury."

It is necessary to consider only such of the exceptions as deal with the questions above stated.

It is true that where a verbal contract has been executed on both sides, the transaction may not be opened up to let in the defense of the Statute of Frauds.But it is a misnomer to characterize the present transaction as *executed.*

The transaction had two elements. One was the sale and delivery of the pressure cooker, at a stated price, which was paid. Treating the matter in this limited aspect, the transaction would of course be correctly characterized as executed, and the Statute of Frauds would have no relevance.

But the subject matter of the present action itself of course shows that there was an additional element in the transaction between the parties, the same consisting of an oral agreement, made as an inducement to the respondent to make the purchase, that the cooker would not explode. Whether we call this element of the transaction a collateral agreement or an independent contract or a supplemental agreement, or by whatever other designation may be applied to it, the fact is that after the consummation of the first element of the transaction, to wit, the sale, there continued in effect, for a period variously estimated by the parties at five to fifteen years, a contractual obligation of the appellant, in favor of the respondent, that the warranty against explosion would continue in effect.

While not so stated by the respondent, the warranty of course must be deemed to embrace a contractual liability on the part of the appellant to indemnify the respondent against the consequences of a breach of the warranty, or the failure of the cooker to measure up to it, resulting in damage to the respondent.

We are constrained to hold that the parties contemplated that appellant's contractual obligation was intended to run for a period exceeding twelve months and that the warranty must be so construed in determining whether the Statute of Frauds is applicable to defeat recovery by the respondent. It is incongruous, to say the least, that a contract may be considered executed and yet that there is an outstanding contractual obligation under it upon which suit may be brought nearly two years after the contract was made.

It is true that the Statute is not applicable where, although the time of performance of an agreement may exceed, or be expressed to extend beyond a year, it could in fact terminate within a year.

The construction that has been placed upon the Statute is that it must be read as applicable in all cases where the contract provides or implies that the performance is not to

take place within a year. To bring a contract within the terms of the Statute, so as to render it unenforceable, because not in writing, it must appear from a reasonable interpretation of the terms of the contract that it is not to be, or is incapable of being, performed within a year. *Walker v. Wilmington, C. & A. R. Co.,* 26 S. C. 80, 1 S. E. 366; 37 C. J. S., Frauds, Statute of, § 42.

It is not necessary, in order to bring a case within the Statute, that the contract explicitly set forth a time for performance extending beyond the statutory period. It is enough that the language of the contract shows a purpose that an actionable breach thereof shall not occur within a year, and this showing may appear from the express language in which the contract is couched, or may consist of a necessary implication from the language used, or from the nature and extent of the performance requirements arising out of the contract. *Walker v. Wilmington, C. & A. R. Co., supra;* 37 C. J. S., Frauds, Statute of, § 49.

In the present case it is true that the appellant's witness, Miss Fowler, admitted that cookers of the character in question have been known to explode within a year, and that it was possible for one of them to wear out in a year. It appears very clearly from the record, however, that this was not the usual or ordinary experience; that with proper use by the ordinary housewife, the utensil would have a life of ten to fifteen years.

On this subject the record contains the following interrogation by the trial Judge:

"By the way, you all want to ask him a question I want to know. What's the only thing that can make one of them explode, if there is one thing only? A. The pressure within the container, sir. We have had them in our labs. We had arrangements with the factory that under no condition were any pots to be released under ninety pounds of pressure.

Q. Is there anything in the world to make one of them explode unless in some way or another you stopped it up until the steam can't escape? A. That's the only way.

Q. Or it gets stopped up. A. That's right."

Assuming the matter to be pertinent under the facts of this case, part performance does not take the case out of the operation of the Statute.

"The fact that a contract is to be or may be partly performed within a year does not take it out of the operation of the statute. The term 'performance' means complete performance. Thus, where the defendant agreed to perform certain acts during successive years, the fact that he performed the contract during some of the years does not take it out of the statute so as to render him liable for a breach of the contract on account of his refusal of further performance. * * *" 49 Am. Jur., Statute of Frauds, Section 35.

"A contract of bailment which by its terms is to extend beyond the period of one year is within the inhibition of the statute of frauds governing contracts not to be performed within a year, even though the destruction of the subject matter of such bailment without the fault of the bailor may terminate the liability of the bailee for subsequent accruing rentals and in effect terminate the contract. This is merely an application of the general rule that the fact that further performance of an agreement cannot be completely performed within a year, by reason of its being rendered impossible of performance by the happening of some contingency, does not take the contract out of the operation of the statute. * * *" 49 Am. Jur., Statute of Frauds, Section 40.

"* * * In some jurisdictions, however, the whole doctrine is repudiated as to the class of contracts, and if an agreement cannot be entirely performed on both sides within a year no amount of part performance will bar the application of the statute. An agreement which is not to be performed within one year is not taken out of the statute by the performance of a counter agreement which is to be per-

formed immediately and therefore is not within the statute. The correct rule has been said to be that whether the statute applies or not depends on the question whether the suit is brought against the party who was to perform his part of the contract within a year; if it is so brought, then the statute does not apply; but if brought against the party whose agreement was not to .be performed within a year, then the statute does apply." 27 C. J., Frauds, Statute of, pp. 357. 358, Section 436; 37 C. J. S., Frauds, Statute of, § 254.

It is true that in a number of cases in this and other jurisdictions it has been stated that performance of a contract by one of the parties thereto takes it out of the Statute, but the doctrine of such cases is wholly inapplicable here. To avoid making the Statute an instrument for the perpetration of frauds instead of a shield for the unwary or imprudent who trust to memory and honesty on the part of the persons with whom they are dealing, the courts under various circumstances have introduced an equitable doctrine in the nature of an estoppel to prevent a party from escaping liability on his contractual obligations through a plea of the defense of the Statute.

An illustration of this doctrine is given in the case of *Bates v. Moore,* 2 Bailey 614, where the Court applied the doctrine to a situation in which the defendant acquired title to slaves under a verbal agreement whereby he would make certain payments at some future date extending beyond a year from the date of the making of the contract. The Court held that performance of this agreement could not be defeated by the plea of the Statute.

In the case of *Gee v. Hicks,* Rich. Eq. Cas. (9 S. C. Eq.) 5, the evidence showed that the defendant desiring his aunt, who resided in Mississippi, to break up her establishment there and to come to South Carolina with her children to reside with him offered her as inducement his verbal promise to pay to her son $3,000.00 when he arrived at the age of twenty-one years (he was sixteen years old at the time) and to pay his aunt the Mississippi hiring rate for the use

of the negro slaves she was to bring with her. The aunt complied with his request, came within a year to South Carolina with her children and resided with him several years, when he died intestate. On the question of the enforceability of the contract the Court held that the promise to pay the $3,000.00 and the agreement to pay the Mississippi hiring rate for the use of the negro slaves did not come within the provisions of the Statute. The Court said:

"* * * If a contract not to be performed within a year, is, after the expiration of the year, entirely executed by one party at the request, or by the consent, of the other party, then the promise to pay for this performance cannot be within the Statute. The party, for whom it is done, has waived that protection, and has put himself on the footing of a debtor for a past and executed consideration. * * *"

In the case of *Rowland & Sons, Inc., v. Bock,* 150 S. C. 490, 148 S. E. 549, the defendant, as tenant, made an alleged oral agreement with his landlord whereby the latter was to construct an addition to the rented premises and to keep the addition in proper repair. The tenant went into possession and paid the agreed rent but the landlord failed and refused to make the repairs. The lease was for a period of seven years. The Court held the Statute of Frauds applicable.

A typical illustration of the application of the doctrine now under discussion is found in the case of *Carter v. Brown,* 3 S. C. 298. In that case there was a verbal agreement made in August, 1864, to serve the defendant as overseer during the year 1865, for compensation to consist of certain cotton to be delivered in January, 1866. The service was performed as agreed, but the defendant refused to deliver the cotton, contending that the agreement was unenforceable by reason of the Statute of Frauds. The Court upheld an action for the cotton on the equitable doctrine under discussion. As the Court said:

"* * * The contract was clearly, at its inception, within the Statute of Frauds. It was a contract, on the one hand, for labor and service for the period of a year, to commence

at a day subsequent to that of the making of the contract, and on the other side, for payment for such labor and service, in specific personal property, at the termination of such period. As the contract was not in writing, neither party could have enforced it, apart from the effect of complete or practical performance had under it.

"The plaintiff has, however, rendered the labor and service intended by the terms of the contract, and now seeks to recover the value of the specific property, which, according to the terms, he ought to have received at the completion of performance on his part.

When labor and service are rendered at the special instance and request of another, the law implies a promise to pay for the same; * * *."

Reverting to the terms of the warranty with which we are here concerned, the respondent testified that she had used the cooker almost two hundred times and that she considered the warranty effectual for a period of five years or ten years; that she understood that the appellant would stand back of it as long as the respondent wanted it to do so.

In seeking the intention and contemplation of the parties from the standpoint of the length of time that the warranty was to continue in effect, the facts last above stated are not without significance. To fail to give effect to this aspect of the case is to disregard the contentions of the respondent herself. A suit for the explosion was brought nearly two years after the purchase of the utensil. It does not become respondent to take the inconsistent positions, first that the warranty was not expressed or intended to be effective for more than a year, and second that contrariwise, she was entitled to bring an action involving breach of a warranty long after the expiration of the limitation expressed in the Statute.

It is not overlooked that the authorities on the subject under discussion are lacking in harmony. But as we view the case, sound legal doctrine combines with the precedents

of this Court to require that the alleged oral warranty be held to constitute an agreement for a period longer than a year, and that as such its enforceability is barred by the provision of the Statute of Frauds above quoted. See, 49 Am. Jur., Statute of Frauds, Section 37; *Thompson v. Gordon,* 3 Strob. L. 196; *Jones v. McMichael,* 12 Rich. L. 176; *Walker v. Wilmington, C. & A. R. Co., supra.*

Other considerations that enter into the present situation need not be discussed, since the view above expressed is determinative of the case.

The foregoing was written as and for the opinion of the Court, and the mandate read: "The judgment of the lower Court is reversed, and case remanded for entry of judgment for the appellant." But Mr. Justice Oxner has written a dissent which will become the majority or prevailing opinion, and my opinion the dissent. Therefore, the following, although more argumentative than opinionative, should be added to my opinion.

The matter with which we are dealing is of very great importance in the business world and I cannot agree to a disposition of the legal questions involved in the case that I believe will open up a floodgate of litigation in a field of law in which there are no specific precedents. In the standard texts on contracts and in the annotations to selected cases (A. L. R., etc.) there is no mention of warranties in the sale of goods as affected by the one year clause of the Statute of Frauds. This, however, far from indicating to me that the view of the law as expressed in my opinion is erroneous, tends to suggest that under the circumstances here involved, no lawyer has been willing to make to an appellate court the contention that the one year clause of the Statute of Frauds is inapplicable.

For a half century or more American industry has been producing household gadgets and other mechanisms of all sorts which in at least a limited sense are dangerous instrumentalities and the use of which involves the taking of pre-

cautions on the part of purchasers to avoid accidents and injuries.

In such connections the manufacturer has found it necessary, for the protection of the purchaser or consumer as well as for its own protection, to formulate rules and regulations governing the use of the particular article, and limiting the responsibility of the manufacturer and the distributor for alleged defects and the consequences of misuse.

In many cases the question of liability would be whether the manufacturer's printed instructions and warranty were actually brought home to the purchaser and whether they were followed. Here, however, we are concerned with the different questions whether the sale of the pressure cooker involved a verbal warranty, and if so, whether such a warranty can, under the circumstances of this case, furnish the foundation of a suit for damages for breach of the alleged warranty.

First of all, emphasis should be placed upon the proposition that the transaction between the parties to this cause consisted of two distinct elements. One was the sale and delivery of a pressure cooker. The other was the collateral and independent agreement constituting or arising out of the alleged warranty. These are two separate matters. As shown by many decisions of our Court, a collateral oral agreement could exist and be legally enforceable even in a case in which the principal phases of the transaction are expressed in writing. In such situations the performance or part performance of the portion of the agreement which is in writing does not militate (from the standpoint of the applicability of the Statute of Frauds) against the enforcement of the oral agreement as both collateral and independent. See for example, *Rowland & Sons, Inc., v. Bock,* 150 S. C. 490, 148 S. E. 549; *City of Greenville v. Washington American League Baseball Club,* 205 S. C. 495, 32 S. E. (2d) 777.

Viewing the matter in that light, the question is whether the warranty upon which the respondent relies is a separate

contract in the contemplation of the Statute of Frauds. On this point I feel satisfied that my opinion correctly sustains the position that the Statute is applicable, with the result that the oral contract is not enforceable.

The parties contemplated that the contract would run for a period somewhere between five and fifteen years. It is not a contract that terminates by reason of the happening of an accident; the parties contemplated that the warranty would still continue in effect even after an accident and through the normal life of the cooker. The application of the Statute is not determinable by the fact that the explosion occurred within the one year period or after the expiration thereof. The issue involves the intention and contemplation of the parties, and the oral agreement upon which the respondent in this case relies cannot be whittled down without impairing the rights of the customer as well as those of the seller.

It is not to be overlooked that apparently the respondent was well aware of the fact that in the absence of a written warranty, she could have lost her case by reason of the inapplicability in this State of the doctrine of *Res ipsa loquitur* unless in some manner that doctrine was circumvented, and the respondent undertook to circumvent it by asserting a verbal warranty that was absolute and unconditional. I suggest that it is contrary to all business experience that any such warranty would be given in connection with the sale of a mechanical device that holds the hazards involved in the creation and regulation of steam pressure.

Of course, the existence and terms of the warranty presented jury issues and these have been decided by the jury against the appellant, but this situation does not reach the issue as to the applicability of the Statute of Frauds.

There is agreement in important phases of the case between my views and those of Mr. Justice OXNER. Neither of us finds any authority holding specifically that a warranty connected with the sale of merchandise is or is not a contract in the strictly technical sense. Neither does either of us over-

look the existence of the rule in this State that the doctrine of *res ipsa loquitur* does not apply.

When we go beyond this we are dealing with a situation in which we can invite litigation by suggesting a means of getting around the Statute of Frauds, or we can afford manufacturers the protection of a statute which in effect says to the public that if they desire the protection of a contract of warranty, they should get it in writing and show that they have suffered loss or damage in spite of the fact that they complied with the terms of the warranty. That is the purpose of the Statute of Frauds. It should be applied so as to discourage suits, rather than encourage the prosecution of suits by upholding verbal agreements that can so readily be formulated out of thin air to accomplish the ends of a given suit.

This case affords the Court an apportunity to establish a salutary rule of law in the field of merchandise sales which in my opinion should be applied to the facts of this case. That rule is that where the article purchased is in the nature of a dangerous instrumentality, the seller is not wholly at the mercy of the buyer in the latter's assertion that the article exploded, after more than a year of actual use, because of breach of an alleged oral warranty.

It is precisely such a situation as this that was contemplated by the various provisions of the Statute of Frauds. The Statute was enacted, not to create difficulties in the proof of honest claims; the fact of its enactment and of legislative adherence to it over the centuries, attests to a legislative recognition of the need of a writing in a case of the present character.

If the seller in this case did make any representations respecting the risks of an explosion in the utensil in question, common knowledge as to the risks of an explosion in such a utensil through neglect in the maintenance or operation of the same is such that no reasonable person should be held to have bought the utensil on the strength of the representa-

tions. The seller's sales talk in such a case should be regarded as mere puffing, or the normal exageration of dealer's talk.

People don't have to be learned in the law to know that if they want more protection than my opinion would give them, they should ask for a written warranty. One was available in this case.