486 S.E.2d 771

James A. ROBERTS, Appellant/Respondent,

v.

Carlton J. "Red" GASKINS, d/b/a Gaskins Commercial Refrigeration Company, Respondent/Appellant.

No. 2681.

Court of Appeals of South Carolina.

Heard Jan. 7, 1997.

Decided June 16, 1997.

480

Jeffrey L. Payne and Arthur E. Justice, both of Turner, Padget, Graham & Laney, Florence, for Appellant/Respondent.

W.E. Jenkinson, III and Jennifer R. Kellahan, both of Jenkinson & Jenkinson, Kingstree, for Respondent/Appellant.

HOWARD, Judge.

James A. Roberts (Roberts) brought this action to collect the unpaid portion of a commission earned from the sale of Carlton J. Gaskins's (Gaskins) business to R.H. Hollis Co., Inc. (Hollis). The case was referred to a special referee who concluded the parties orally modified their brokers agreement to provide for installment payments of the commission when the business sold because Gaskins financed a portion of the purchase price. We affirm.

## I. *FACTUAL BACKGROUND*

Gaskins listed his refrigeration business for sale with Roberts in a written agreement dated October 29, 1992. According to Gaskins, Roberts calculated the value of the business at approximately $1,200,000, including real property. The written agreement did not state a value or price and did not include any reference to the real estate. It provided Roberts was to serve as broker in the sale of the business and was to receive five (5%) percent of the total sales price of the business as his fee at the closing.

Roberts then marketed the refrigeration business by advertising it and handling inquiries. He advertised it in the newspaper as "Sales/Distribution Co. Est. 1962. Sales of $1.0MM. Loyal customer base. Florence area." Prior to the contract with Hollis, Roberts received other inquiries and at

least one offer to buy the business, which he passed on to Gaskins. The previous offer included the sale of Gaskins's real property as a part of the proposed contract.

In February 1994, Hollis submitted an offer of purchase. Negotiations were initially conducted through Roberts. Hollis did not have enough money to purchase the business outright, nor could he afford to buy the real estate. Ultimately, Hollis and Gaskins negotiated directly with each other to reach an agreement in July 1994.. Under the final contract Hollis agreed to pay $600,000 for the business assets, excluding real estate, and to lease the real property from Gaskins for five years with an additional five year option. Gaskins agreed to finance $215,000 of the purchase price over ten years.

Roberts's commission was calculated at closing on the basis of the business asset sales price of $600,000. Roberts was only paid the portion of his commission attributable to the amount paid by Hollis in cash at the closing. This dispute arose over the terms of payment of the unpaid portion of Roberts's commission. Gaskins maintained he only agreed to finance the sale after Roberts agreed to accept his commission in installments as Gaskins was paid. According to Gaskins, he reached this understanding with Roberts prior to entering into the contract with Hollis. Roberts denied this, although he did admit agreeing to give Gaskins a short time following closing to pay the remainder.

When Hollis subsequently defaulted, Roberts brought this action to enforce his commission. Gaskins raised as an additional defense that Roberts was not entitled to a commission because his real estate license had expired, and the lease of real estate was included in the transaction.

## II. *ISSUES*

A. *Roberts's issues on appeal*

1. Did the special referee err in finding the parties orally modified the listing agreement?

2. Did the special referee err in ruling the oral modification was not barred by the Statute of Frauds?

B. *Gaskins's issue on appeal*

1. Did the special referee err in finding Roberts was entitled to his commission when neither he nor anyone in his company had a real estate broker's license?

## III. SCOPE OF REVIEW

An action for breach of contract seeking money damages is an action at law. *Sterling Dev. Co. v. Collins,* 309 S.C. 237, 421 S.E.2d 402 (1992). In an action at law, the appellate court will correct any error of law, but it must affirm the special referee's factual findings unless there is no evidence that reasonably supports those findings. *Jefferies v. Phillips,* 316 S.C. 523, 451 S.E.2d 21 (Ct.App.1994).

## IV. DISCUSSION

### A. Roberts's appeal

#### 1. Oral modification to broker's contract

Roberts first contends no evidence exists to support an oral modification to the broker's agreement. We disagree.

A contract is an obligation which arises from actual agreement of the parties manifested by words, oral or written, or by conduct. *Gaskins v. Blue Cross–Blue Shield of South Carolina,* 271 S.C. 101, 245 S.E.2d 598 (1978). The general rule is that a written contract may be modified by an oral agreement. *King v. PYA/Monarch, Inc.,* 317 S.C. 385, 453 S.E.2d 885 (1995). A modification of a written contract must fulfill all of the elements required for a valid contract. *Player v. Chandler,* 299 S.C. 101, 382 S.E.2d 891 (1989). The necessary elements of a contract are an offer, acceptance, and valuable consideration. *Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins. Co.,* 313 S.C. 215, 437 S.E.2d 122 (Ct.App.1993).

The special referee found Roberts agreed to modify his fee agreement and the modified agreement was supported by sufficient consideration. Gaskins testified he would only agree to finance a portion of the purchase price if Roberts was willing to receive installment payments of his brokerage commission as Gaskins was paid. According to Gaskins, he closed

the transaction in reliance on his modified commission agreement with Roberts. This testimony provides reasonable evidence to support the special referee's conclusion that Roberts agreed to the modification and that it was supported by valuable consideration.

### 2. *Statute of Frauds*

■ Roberts next contends the special referee erred by ruling the oral modification was not barred by the Statute of Frauds. Again, we disagree.

■ The Statute of Frauds provides that all agreements not to be performed within one year from their making, shall be in writing and signed by the party to be charged. S.C.Code Ann. § 32–3–10(5) (1991). An oral agreement, including an oral modification, will be barred by the Statute of Frauds if it is incapable of being performed within one year. *Player v. Chandler*, 299 S.C. at 105, 382 S.E.2d at 894.

■ It is equally well established that the Statute of Frauds applies only to contracts which are impossible of performance within one year. *Joseph v. Sears Roebuck & Co.*, 224 S.C. 105, 77 S.E.2d 583 (1953) (finding an oral warranty of a pressure cooker was possible of performance within one year, thus removing it from the purview of the Statute of Frauds). A contract having a contingency which may occur within the year need not be supported by a written document. *Joseph v. Sears Roebuck & Co.*, 224 S.C. at 111, 77 S.E.2d at 586. If there is a possibility of performance within a year, the contract is not barred by the Statute of Frauds. *Id.* The fact that performance within a year is highly improbable or not expected by the parties does not bring a contract within the scope of this clause. *Id.* at 111, 77 S.E.2d 583.

In *Joseph v. Sears Roebuck & Co.* our supreme court cited *Warner v. Texas & P. Ry. Co.*, 164 U.S. 418, 432–34, 17 S.Ct. 147, 153, 41 L.Ed. 495 (1896), for the following principle:

It seems to be well settled that, where there is a contingency expressed upon the face of the contract, or implied from the circumstances, upon the happening of which within a year the contract or agreement will be performed, the contract is not within the statute, though it be clear that it cannot be performed within a year except in the event the

contingency happens.... If the contingency is such that its happening may bring the performance within a year, the contract is not within the terms of the statute; and this is true whether the parties at the time had in mind the happening of the contingency or not. The existence of the contingency in this class of cases, and not the fact that the parties may or may not have contemplated its happening, is what prevents the agreement from coming within the scope of the statute.

An example of the distinction between a contract impossible of performance within a year and one which is capable of being performed within a year, though only contingently so, is thus explained as follows: If one leases real property for a period of years and agrees to maintain it during the time of the lease, the contract is said to be impossible of performance in less than a year. *Joseph v. Sears Roebuck & Co.*, 224 S.C. at 115, 77 S.E.2d at 588. Conversely, a warranty which runs for the lifetime of a pressure cooker, even though designed to last for many years, is still capable of performance within a year because the cooker might fail of its essential purpose within the year. *Id.* at 114, 77 S.E.2d 583.

The contingency relevant to this contract is the possibility of prepayment by the purchaser, Hollis.[1] The special referee hypothesized Hollis could pay the rest of the purchase price within a year, even though not required to do so. He deduced the agreement to pay Roberts the rest of his commission was a contract capable of completion within one year upon the happening of this contingency. Consequently, the contract was not impossible of performance within a year.

Nothing in the record made prepayment by Hollis impossible. Interest rate fluctuations quite often make refinancing and/or prepayment advantageous to a borrower. Prepayment is not at all out of the realm of possibility in transactions of this nature. Therefore, we conclude the master's reasoning is sound.

## B. *Gaskins's appeal*

Roberts was not licensed as a real estate broker at the time of their transaction. Gaskins asserts the activities

---

1. The actual note signed by Hollis is not included in the record on appeal.

Roberts performed in the sale of his business required a real estate broker's license, and thus he should not receive a commission. The special master ruled the parties modified their original agreement so that real estate did not form a part of the sales contract or a part of the calculated commission.

Any individual who acts as a real estate broker, counsellor, real estate salesman, or property manager must be licensed by the South Carolina Real Estate Commission. S.C.Code Ann. § 40–57–10 (Supp.1996). The statutory definition for a broker is as follows:

> any person who for a fee, commission, or other valuable consideration, or with the intent or expectation of receiving a fee, commission, or consideration, negotiates or attempts to negotiate the listing, sale, auction, purchase, exchange, or lease of any real estate or of the improvements thereon, or negotiates or attempts to negotiate, or solicits or attempts to solicit, a referral with respect to the foregoing activities. . . .

S.C.Code Ann. § 40–57–10 (Supp.1996). Real estate is defined in § 40–57–10(7) (Supp.1996) to include "leaseholds, as well as any other interest in land, whether corporeal, incorporeal, freehold, or nonfreehold, and whether the real estate is situate in this State or elsewhere." The Act provides the following criminal penalty as a mechanism for enforcing the licensing requirements:

> It is unlawful for any person to act as a real estate broker, counsellor, real estate salesman, property manager, or real estate auctioneer or to advertise or assume to act as such without first having obtained a license issued by the Real Estate Commission. Any person violating this provision is guilty of a misdemeanor and, upon conviction, must be punished by a fine of not more than five hundred dollars or by imprisonment for a term of not more than six months, or both, in the discretion of the court.

S.C.Code Ann. § 40–57–20 (Supp.1996).

■ A business broker can be defined as an individual who negotiates the sale or transfer of an ongoing business for a commission or fee. *Kazmer–Standish Consultants, Inc. v. Schoeffel Instruments Corp.*, 89 N.J. 286, 445 A.2d 1149 (1982). "Although the sale of a business frequently includes valuable

real estate, the business broker concentrates on the transfer of the entire business." *Id.,* 445 A.2d at 1151.

According to Gaskins, Hollis did not have the money to purchase "the total package" outright, so the parties directly negotiated a lease of the real estate. The final lease was not a part of the business sales contract. Additionally, Hollis's purchase offer required Gaskins to finance a portion of the price, which he was unwilling to do unless Roberts first agreed to receive his commission on a pro-rata basis as Gaskins was paid.

On the strength of Gaskins's testimony, the special referee concluded the parties modified their original commission contract. He ruled the activities performed by Roberts did not require that he have a real estate broker's license, because Roberts did not receive or seek to receive compensation for the lease agreement. Gaskins argues on appeal that Roberts negotiated the transaction within the meaning of the licensing statute by bringing Hollis to him as a prospective purchaser, and the fact the parties completed negotiation of the lease of real property directly between themselves does not relieve him of the burden of being licensed.

It is generally recognized that a "broker 'negotiates' within the meaning of the licensing statutes just as much when he brings the parties together in such a frame of mind that they can by themselves evolve a plan of procedure as when he carries on the discussion and personally induces an agreement to accept a specific provision." 12 Am.Jur.2d *Brokers* § 12 (1964). Applying this same reasoning, our supreme court has recognized that a broker earns his or her fee as the procuring cause of the sale even if the actual agreement is made by the owner. *Goldsmith v. Coxe,* 80 S.C. 341, 346–47, 61 S.E. 555, 557 (1908) ("[T]he rule of reason, which seems to be supported by practically all the authorities on the subject, is that the broker is entitled to his commissions, if during the continuance of his agency, he is the efficient or procuring cause of the sale, though the actual agreement for the sale is made by the owner without the aid of the broker; and the broker will be regarded the procuring cause if his intervention is the foundation upon which the negotiation resulting in the sale is begun.").

The evidence is clear that Roberts "negotiated" the sale of the business because he instigated the negotiations between the parties which resulted in the sale. Therefore, the mere fact that Gaskins and Hollis negotiated the lease of the real property directly does not remove the transaction from the real estate broker licensing requirements. If Roberts was required to have a real estate broker's license to earn a commission on the sale of the personal property of the business because the business also included real property then the fact of the direct negotiation of the agreement to lease the real property by the parties did not obviate the necessity of a license.

We find no South Carolina case which directly addresses the issue confronting us. The applicability and effect of real estate broker licensing requirements to mixed transactions, especially in the context of business sales, has been the subject of many decisions from other jurisdictions and is a matter of statutory construction. Some jurisdictions interpret their statutory licensing scheme to specifically preclude the enforcement of a commission in such instances. *See Thomas v. Jarvis*, 213 Kan. 671, 518 P.2d 532 (1974); *Massie v. Dudley*, 173 Va. 42, 3 S.E.2d 176 (1939); *Hunter v. Cunning*, 176 Or. 250, 157 P.2d 510 (1945); *Broughall v. Black Forest Dev. Co.*, 196 Colo. 503, 593 P.2d 314 (1978) (applying statute which had been specifically amended to include sale of real estate as part of business sale); C. Clifford Allen, III, Annotation, *Necessity of Having Real–Estate Broker's License in Order to Recover Commission as Affected by the Fact that Business Sold Includes Real Property*, 82 A.L.R.3d 1139 (1978).

Other courts have recognized their real estate broker licensing statutes as penal in nature, to be strictly construed. Refusing to broaden them by implication where they contain no language denying the right to sue for compensation or do not specifically include a mixed sale, these courts have taken a more fact intensive approach, concluding the commission is enforceable as long as the sale of real estate is not the "predominant" factor.[2] *See Dodge v. Richmond,* 5 A.D.2d 593,

---

**2.** We note that unlike the licensing statute regulating residential home builders found in S.C.Code Ann. § 40–59–130 (Supp.1996), the statuto-

173 N.Y.S.2d 786 (1958); *Business Brokers Int'l Corp. v. Roderick,* 24 Mass.App.Ct. 957, 510 N.E.2d 301 (1987). This view has come to be known as the New York rule.

Still other jurisdictions have modified the New York rule to enforce the brokerage fee contract if the sale of real estate is not the predominant factor, but limited to the value of the personal assets. These courts have found such contracts to be severable, allowing recovery of that portion of the sales commission attributable to the value of the business, exclusive of real estate. *See Abramson v. Gulf Coast Jewelry & Specialty Co.,* 445 F.2d 802 (5th Cir.1971); *Moreland v. Kilgore,* 83 Ga.App. 606, 64 S.E.2d 295 (1951); *Quick Shops of Miss., Inc. v. Bruce,* 232 So.2d 351 (Miss.1970).

In *Kazmer–Standish Consultants, Inc. v. Schoeffel Instruments Corp.,* 445 A.2d at 1150, the New Jersey supreme court reversed its former position so as to allow the recovery of business sales commissions on personal property even when the transaction included real estate, observing that the New Jersey statute covering real estate brokers did not specifically incorporate a business sale which included real property. The court concluded:

> In the absence of a legislative direction that a business broker may not recover a commission, we believe it is more equitable and reasonable to permit recovery on that part of a sale of an ongoing business represented by personal property regardless of the relative value of real and personal property.

*Id.* at 1153. Thus, under the New Jersey rule, a business broker can recover a commission based on the value of the personal property, irrespective of its relative importance in the sale.

As in New York, Mississippi, and New Jersey, our statute regulating real estate brokers does not specifically include a business broker or a "mixed" sale of real property and business assets. The regulatory scheme provides a monetary penalty and criminal sanctions for violation of the licensing

---

ry scheme regulating real estate brokers contains no language specifically preventing an unlicensed broker from maintaining an action on the commission contract. *See* S.C.Code Ann. § 40–57–10 to 280 (Supp. 1996).

requirements. As such, it is unquestionably a penal statute, and it must be strictly construed. *Kinard v. Fleet Real Estate Funding Corp.*, 319 S.C. 408, 461 S.E.2d 833 (Ct.App.1995). We will not extend it by implication.

We conclude to prevent a business broker from enforcing a legal claim to a commission earned from the sale of business assets simply because the business includes real estate would extend the real estate broker licensing provisions beyond their stated definitions and purposes. Although there may be good reasons to broaden this regulatory scheme to include business brokers, there are also credible reasons not to do so. For example, as noted in *Kazmer–Standish Consultants, Inc. v. Schoeffel Instruments Corp.*, 445 A.2d at 1152, business brokers deal with sophisticated businessmen in complex transactions, whereas real estate brokers and salesmen deal in large measure with unsophisticated homeowners. Suffice it to say it is not our prerogative to legislate.

We are also convinced there is no purpose to be served by superimposing a "predominant purpose" test on the transaction, whereby a business broker is precluded from maintaining an action for a commission if the business sale involves "predominantly real estate." Applying such a test serves no legitimate purpose if the business broker is limited to a commission based on the value of the personal property sold, since the "personalty of an ongoing business, even when it is less valuable than the real property, may be substantial and provide a basis for a significant commission." *Id.* at 1153.

We, therefore, conclude that a business broker unlicensed as a real estate broker may enforce a commission contractually earned on the sale of the personal property of a business, irrespective of the form of sale, even though the sale may include real estate; provided, of course, no commission can be based either directly or indirectly on the value of the real property involved.

For the foregoing reasons, the decision of the special referee is

**AFFIRMED.**

HEARN and STILWELL, JJ., concur.