489 S.E.2d 663

**Karen ELMORE, Appellant,**

v.

**Tony RAMOS and Helen Ramos, Respondents.**

**No. 2691.**

Court of Appeals of South Carolina.

Submitted June 3, 1997.

Decided June 30, 1997.

O. Grady Query, Charleston, for appellant.

Joseph S. Brockington and Mark C. Brandenburg, Charleston, for respondents.

GOOLSBY, Judge:

This action arises out of a fall that Karen Elmore asserts was caused by Tony and Helen Ramoses' Black Labrador Retriever, a large domestic animal. The trial court granted the Ramoses' directed verdict motion. The question on appeal is whether a victim may recover under S.C.Code Ann. § 47–3–110 (1987) for injuries caused by a dog's jumping on the victim. We reverse and remand.[1]

## STANDARD OF REVIEW

In ruling on a motion for directed verdict, the trial court must view the evidence and all inferences that may reasonably be drawn therefrom in the light most favorable to the non-moving party. *Hollins v. Richland County Sch. Dist. One*, 310 S.C. 486, 427 S.E.2d 654 (1993). This court must do likewise on appeal. *Davenport v. Walker*, 280 S.C. 588, 313 S.E.2d 354 (Ct.App.1984). If the evidence is susceptible of more than one reasonable inference, the trial court must submit the case to the jury. *Tubbs v. Bowie*, 308 S.C. 155, 417 S.E.2d 550 (1992).

## FACTS

The parties have been friends approximately five years, visiting one another as often as four times per week. Elmore

---

1. Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument pursuant to Rule 215, SCACR.

testified that, while visiting the Ramoses, she and Helen Ramos went to the backyard to feed some rabbits. The Ramoses' dog was also in the backyard. While Helen Ramos fed her rabbits, Elmore, at Ramos's request, walked up the ramp to the shed to get more rabbit food. Upon exiting the shed with the rabbit food, the dog "jumped on [Elmore] from behind" causing her to fall off of the ramp.

Elmore suffered a compound fracture that required extensive medical treatment. In Elmore's first surgery, at Baker Hospital, Elmore's doctor placed plates and screws in her leg to stabilize it during the healing process. Shortly thereafter and because Elmore could no longer afford the treatment provided by Baker Hospital, her case was transferred to the Medical University of South Carolina. In her second surgery, Elmore's doctor removed the hardware that had been placed in her leg. In the third surgery Elmore's doctor cut the affected bone in half and realigned it because it had not healed properly. Additionally, an external fixator was put into place that Elmore adjusted every six to eight hours to aid in straightening her leg. Elmore's daughter maintained the fixator as required by six to eight times a day pushing the skin away from the rods and cleaning the rods with antiseptic. This was a very painful process for Elmore. Elmore's injuries have required more than two and a half years of painful surgical procedures and have left her with a permanent disability.

## DISCUSSION

Under section 47-3-110, an owner is liable for injuries caused by a dog who "bites or otherwise attacks" another regardless of the owner's negligence. S.C.Code Ann. § 47-3-110 (1987). The statute, thus, imposes strict liability on owners, except where the victim provokes the dog.

Elmore testified the dog "wasn't attacking me. It just jumped up on me from behind." Based on this testimony, the trial court apparently concluded the statute did not apply.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Mitchell v. Holler*, 311 S.C. 406, 410, 429 S.E.2d 793, 795 (1993). The words of a statute must be given their plain and ordinary

meaning without resorting to subtle or forced construction to limit or expand a statute's operation. *Wortman v. City of Spartanburg,* 310 S.C. 1, 425 S.E.2d 18 (1992). "A statute as a whole must receive a practical, reasonable and fair interpretation consonant with the purpose, design, and policy of the lawmakers." *D.W. Flowe & Sons, Inc. v. Christopher Constr. Co.,* 326 S.C. 17, 22, 482 S.E.2d 558, 561 (1997) (citations omitted).

■ Based on the plain meaning of the statute, we hold the legislature intended the term "otherwise attacks" to include situations where a dog, as here, jumps on or pounces upon someone. *See* J.I. Rodale, THE SYNONYM FINDER 77 (1986) (synonyms for "attack" include "set upon [and] pounce upon"); THE AMERICAN HERITAGE DICTIONARY 139 (2d ed. 1982) ("attack" means to "set upon physically" and "applies to any offensive action"); WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 20 (2d ed. 1983) (synonym for "attack" includes to "fall upon"). Clearly the legislature considered other injuries besides those resulting from bites; hence the inclusion of the term "otherwise attacks" in the statute. *Cf. Henry v. Lewis,* 327 S.C. 336, 489 S.E.2d 639 (1997) (holding section 47–3–110 is limited to dog *attack* cases).

■ The next question is whether an evil motive is required under section 47–3–110. If a victim is *bitten* by a dog, the statute does not require proof of an evil motive. Neither, then, is proof of an evil motive required where the victim's injuries are caused by a dog's *jumping on* or *pouncing upon* the victim.

Moreover, pre-statute cases in which the plaintiff was required to make a showing of "vicious disposition," defined this as

a propensity or tendency of an animal to do any act that might endanger the safety of the persons and property of others in a given situation. Although an animal is *actuated solely by mischievousness or playfulness, rather than maliciousness or ferociousness,* yet, if it has a tendency to do a dangerous or harmful act, *it has a vicious propensity within the meaning of the rule* holding the owner or keeper

liable for injuries resulting from vicious propensities of which he has knowledge.

*Mungo v. Bennett,* 238 S.C. 79, 81–82, 119 S.E.2d 522, 523 (1961) (emphasis added) (citing 3 C.J.S. *Animals* § 148, at 1250–51). Because the common law does not require an evil motive, we think had the legislature intended to require a showing of evil motive, it would have specifically said so.

■ As to any issue regarding proximate cause, it is ordinarily a question of fact for the jury. *Davenport v. Walker,* 280 S.C. 588, 313 S.E.2d 354 (Ct.App.1984).

■ When the evidence is viewed in the light most favorable to Elmore, we think she presented sufficient evidence to withstand a motion for directed verdict. Elmore testified she would not have fallen and injured herself had the dog not jumped on her.

**REVERSED AND REMANDED.**

HOWELL, C.J., and ANDERSON, J., concur.