592 S.E.2d 307

Paul SHERMAN, Appellant/Respondent,

v.

W & B ENTERPRISES, INC., Respondent/Appellant.

No. 3701.

Court of Appeals of South Carolina.

Heard June 12, 2003.

Decided Nov. 24, 2003.

Rehearing Denied Feb. 20, 2004.

244

Gerald F. Smith and James B. Richardson, Jr., both of Columbia, for Appellant–Respondent.

Thomas B. Bryant, III, of Orangeburg, for Respondent–Appellant.

BEATTY, J.:

These cross-appeals arise from a suit Sherman brought against W & B Enterprises, Inc. (W & B) alleging breach of contract and violation of the Payment of Post–Termination Claims to Sales Representatives Act, S.C.Code Ann. § 39–65–10 to –80 (Supp.2002). Sherman sought commissions for sales W & B made to K–Mart during his tenure with W & B. Following a non-jury trial in the circuit court, the trial court awarded Sherman the commissions he sought, but only for orders delivered before W & B terminated him. Additionally, the trial court refused to award Sherman attorney fees.

Sherman appeals. He argues the trial court's finding he is not entitled to commissions for sales made to K–Mart before his termination, but not delivered, is erroneous. He further argues the trial court erred in failing to award him attorney fees under S.C.Code Ann. § 39–65–10 to –80 (Supp.2002), contending such a statutory award is mandatory. In a cross-appeal, W & B argues the trial court erred in finding it entered an oral contract with Sherman. We affirm in part and reverse in part.

## I. FACTS/PROCEDURAL BACKGROUND

Sherman joined W & B as a sales representative in either 1992 or 1993. Initially, he represented two accounts, Southern States and Wal–Mart stores. His agreement with W & B provided he would receive a ten percent commission on all sales he made to Southern States and a five percent commission on all sales he made to Wal–Mart.

In September 1993, Sherman contacted Joe Antonini, the president and chief executive officer of K–Mart Corporation (K–Mart). Antonini and Sherman's brother had been fraternity brothers in college, through which Sherman became familiar with Antonini. In his letter, Sherman sought to sell W & B's products to K–Mart stores. In response to the letter, Antonini promptly had a K–Mart merchandise buyer contact Sherman regarding the prospect of a business relationship, which soon developed. After a small test order in 1994 succeeded, Sherman proceeded to sell approximately $5 million to $6 million of W & B's merchandise to K–Mart in 1995. He received a commission of three percent of these sales from W & B.

After a dispute with W & B, Sherman resigned in late 1996. The following spring, W & B made overtures to Sherman in an effort to resume their business relationship. He returned to the company in March or April of 1997, on the condition that, among other things, he receive a three percent commission on all K Mart sales.

W & B made no sales to K–Mart in 1997. Sherman, along with Jeffrey Watford, a son of W & B's owner Woody Watford, met with K–Mart buyers in 1998 about resuming their business relationship. As a result, W & B received "some orders" for merchandise from K–Mart in 1998.

In the meantime, Sherman was increasing his sales to Wal–Mart, and began spending more time on the account. Consequently, Jeffery Watford increased his role in W & B's sales relationship with K–Mart.

Sherman discovered in January 1999 that his commission on K–Mart orders had been reduced to two percent. No agreement had been made to reduce his commission from three percent. After Sherman brought the change to W & B's

attention, Watford assured Sherman he would receive the balance due to make his compensation equal to three percent of his sales to K–Mart. W & B also failed to pay Sherman any commission on the Valentine's Day 2000 sale to K–Mart, but not shipped until after W & B terminated Sherman. Sherman would have earned an $18,960.48 commission on that sale, based on a three percent rate of commission.

## II. Sherman's Appeal

### A. Issues

1. Did the circuit court err in finding that Sherman was not entitled to receive a commission on the K–Mart order booked before his employment was terminated but not shipped until afterwards?

2. Did the circuit court err in holding that the award of an attorney's fee to the prevailing party under S.C.Code Ann. § 39–65–30 (Supp.2001) is discretionary rather than mandatory?

### B. Standard of Review

An action for breach of contract is an action at law. *Roberts v. Gaskins*, 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct.App.1997). An ordinary suit to recover attorney fees is also an action at law. *Weatherford v. Price*, 340 S.C. 572, 578, 532 S.E.2d 310, 313 (Ct.App.2000). "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). "The rule is the same whether the judge's findings are made with or without a reference." *Id.* "The judge's findings are equivalent to a jury's findings in a law action." *Id.*

### C. Law/Analysis

#### 1. Commissions

Sherman maintains no evidence exists in the record to support the trial court's finding that he was not entitled to

receive a commission on orders booked before his employment ended but not shipped until afterward. We agree.

This issue concerns the trial court's decision not to award Sherman a commission for the Valentine's Day 2000 sale. In its order, the trial court stated:

> It is standard practice in the industry to only pay commissions when goods are shipped as quite often orders are changed, sometimes cancelled and the transaction is effectively not completed until shipment. As a result, [Sherman's] claim on the Valentine's Day 2000 order, being shipped after [Sherman] left [W & B], would not be covered.

However, the record contains no evidence to support the trial court's finding that this is a "standard practice in the industry." In fact, the record indicates that W & B's practice was just the opposite, since W & B undisputedly paid Sherman commissions on Wal–Mart accounts for sales he made before he was terminated that were not delivered until after his termination.

## 2. Attorney's Fees

■ Sherman contends that an award of reasonable attorney fees to the prevailing party is mandatory under S.C.Code Ann. § 39–65–30 (Supp.2001). We agree.

The relevant South Carolina statutes in this case regarding post-termination claims to sales representatives provide:

> When a contract between a sales representative and a principal is terminated for any reason, the principal shall pay the sales representative all commissions that have or will accrue under the contract to the sales representative according to the terms of the contract.

S.C.Code Ann. § 39–65–20 (Supp.2002).

. . .

> A principal who fails to comply with the provisions of Section 39–65–20 is liable to the sales representative in a civil action for:
>
> (1) All amounts due the sales representative plus punitive damages in an amount not to exceed three times the amount of commissions due the sales representative; and

(2) attorney's fees actually and reasonably incurred by the sales representative in the action and court costs.

S.C.Code Ann. § 39–65–30 (Supp.2001) (emphasis added).

Sherman contends the use of the language "is liable" makes the attorney's fee provision of this statute mandatory, rather than within the trial court's discretion.

█ "The cardinal rule of statutory construction is that we are to ascertain and effectuate the actual intent of the legislature." *Burns v. State Farm Mut. Auto. Ins. Co.,* 297 S.C. 520, 522, 377 S.E.2d 569, 570 (1989). "The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand a statute's operation." *Elmore v. Ramos,* 327 S.C. 507, 510–511, 489 S.E.2d 663, 665 (Ct.App.1997). The "use of the word 'may' signifies permission and generally means that the action spoken of is optional or discretionary unless it appears to require that it be given any other meaning in the present statute." *Kennedy v. South Carolina Ret. Sys.,* 345 S.C. 339, 352–53, 549 S.E.2d 243, 250 (2001).

Here, the statute's use of the term "is liable," instead of "may be liable" reflects a mandate rather than an option. Thus, we find that the statute's language providing "[A] principal who fails to comply with the provisions of Section 39–65–20 is liable to the sales representative in a civil action for ... attorney's fees actually and reasonably incurred by the sales representative in the action and court costs" can only reasonably be construed to mandate an award of attorney fees where a violation of the statute is found. Accordingly, we find the circuit court erred in failing to award reasonable attorney's fees and related costs pursuant to the statute, and remand for further proceedings to determine the amount of attorney's fees and expenses to which Sherman is entitled.

## III.  W & B Enterprise's Appeal

### A.  Issue

Did the circuit court err in finding an oral contract existed between Sherman and W & B?

## B. Standard of Review

█ When the existence of a contract is questioned and the evidence either conflicts or gives rise to more than one inference, the issue of the contract's existence becomes a question for the finder of fact. *See Small v. Springs Indus., Inc.,* 292 S.C. 481, 483, 357 S.E.2d 452, 454 (1987) (stating that under the common law, a trial court should submit to the jury the issue of existence of a contract when its existence is questioned and the evidence either conflicts or admits of more than one inference). "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). "The judge's findings are equivalent to a jury's findings in a law action." *Id.*

## C. Law/Analysis

█ W & B argues Sherman failed to prove he formed an oral contract with W & B. We disagree.

Although the record conflicts, Sherman testified that he and Watford, Sr., agreed that Sherman would be paid a full three percent commission on K–Mart orders after he resumed working for W & B. Further, Sherman was in fact paid three percent commission on some of the K-mart orders. This provides "any evidence" to support the trial court's findings that W & B and Sherman agreed to compensate Sherman at a rate of three percent in commissions for sales W & B made to K–Mart after Sherman returned to W & B in 1998. Although Sherman's testimony conflicts with other evidence in the record, our standard of review only allows us to look for the *existence* of evidence, and not to weigh its credibility. Accordingly, we find evidence to support the trial court's finding that Sherman and W & B entered an oral contract, and affirm the circuit court's finding on this matter.

## CONCLUSION

For the forgoing reasons, the decision of the circuit court is

AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.

HOWARD, J., and JEFFERSON, A.J., concur.