THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR
 RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2),
 SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 A. Gary Ezzo
 and Anne Marie Ezzo, Respondents,
 v.
 Gregory E.
 Smith, Appellant.
 
 
 

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court
 Judge
Unpublished Opinion No. 2009-UP-391
Submitted April 1, 2009  Filed July 8,
 2009
AFFIRMED AS MODIFIED

 
 
 
 William  Jung, of Mount Pleasant, for Appellant.
 William  Scott, of Charleston, for Respondents.
 
 
 

PER CURIAM: In
 this breach of contract action, Gregory E. Smith appeals the trial court's
 $11,000 judgment in favor of A. Gary Ezzo and Anne Marie Ezzo (collectively the
 Ezzos).  We affirm as modified. [1] 
FACTUAL/PROCEDURAL
 BACKGROUND
The
 Ezzos purchased a house in Mt. Pleasant from Charleston Building Group, which
 was owned in part by Smith.  At the time of the purchase, Smith was involved in
 litigation with his partners in Charleston Building Group.  The house was only
 80% to 85% completed and the Ezzos purchased it "as-is."  They
 subsequently entered into a contract with Smith for completion of the house on
 February 19, 2002. 
The contract, which
 was prepared by Smith, called for total payment of $136,200 with the work and
 payment schedule divided into five phases and payments made in advance.  On
 April 18, 2002, the parties executed a change order with some variations for Phases
 2, 3, and 4.  The Ezzos paid in advance the full payments for Phases 1, 2, and
 4 and 90% of Phase 3.  Mr. Ezzo testified that for each phase, Smith failed to
 complete part of the work required for that phase.  
The
 Certificate of Occupancy was issued on July 31, 2002, and the Ezzos moved into
 the house that day. Although the work on the house was not complete, the Ezzos
 had moved to Mt. Pleasant from California and needed a place to live.  On
 August 9, the Ezzos paid Smith $4,767.00 in advance for Phase 5, making their
 total payments to Smith $123,000.00, which was 90% of the contract price.  Mr.
 Ezzo testified he withheld the remainder of the payment because not all of the
 work had been completed for the previous phases and he had concerns that Smith
 was not making payments to his subcontractors and vendors.  He stated that when
 he explained his reasons for the partial payment, Smith agreed that it was
 fair. 
During Labor Day weekend,
 Smith was seriously injured when he fell off a ladder while working at the Ezzos'
 house.  He stated he was bedridden for thirty days and then for another fifteen
 days he was unable to work.  On October 4, 2002, Smith sent the Ezzos an email
 stating that while he could not perform any physical work himself, he could
 provide adequate supervision to have the remaining work completed.  He
 requested the Ezzos send him the remaining money owed so the work could be
 completed. The Ezzos responded in a letter dated October 5, 2002, asserting
 that they did not owe Smith any money at that time because a considerable
 amount of work remained unfinished and exceeded the 10% of the contract price
 that they had retained.  In the letter, they listed items that needed to be
 completed and raised their concerns that subcontractors had yet to be paid.  In
 a letter postmarked November 22, 2002, Smith replied that he disagreed with the
 Ezzos' position and stated he had complied with the terms of the contract.  He
 asserted that he would not proceed with completing the work on the house.  In
 their reply, the Ezzos requested Smith have the two mechanic's liens placed on
 the property by vendors removed, correct electrical problems, and provide the
 remaining screens for the windows.  The Ezzos offered to discuss the situation
 with Smith after these issues were resolved.  
The
 Ezzos eventually brought this action in small claims court.  Although they
 stated their damages exceeded $7,500.00, they limited their claim to this
 amount to fall within the jurisdictional limit of small claims court.  Smith
 filed an answer denying the Ezzos' claims and a counterclaim seeking $18,840.00
 in damages.  Because the amount Smith sought exceeded the jurisdictional limits
 of small claims court, the case was transferred to the court of common pleas
 where the Ezzos filed their reply to Smith's counterclaim.  
After
 a bench trial, the trial court issued a Form 4 order finding in favor of the
 Ezzos in the amount of $11,000.00.  Smith filed a motion to alter or amend the
 judgment, asking the court to make finding of facts and conclusions of law. 
 The Ezzos submitted a proposed order in response to which Smith submitted a
 letter objecting to specific language.  The trial court issued an order setting
 forth several items included in the $11,000.00 judgment.  This appeal
 followed.  
STANDARD OF REVIEW
"An
 action for breach of contract seeking money damages is an action at law."  R & G Constr., Inc., v. Lowcountry Reg'l Transp. Auth., 343 S.C.
 424, 430, 540 S.E.2d 113, 117 (Ct. App. 2000).  "In an action at law, on
 appeal of a case tried without a jury, the findings of fact of the judge will
 not be disturbed upon appeal unless found to be without evidence which
 reasonably supports the judge's findings."  Townes Assocs. Ltd. v. City
 of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).   However,
 "a reviewing court is free to decide questions of law with no particular
 deference to the trial court."  Hunt v. S.C. Forestry Comm'n, 358
 S.C. 564, 569, 595 S.E.2d 846, 848-49 (Ct. App. 2004).
LAW/ANALYSIS
A.  Antecedent breach
Smith
 argues the trial court erred in ruling Smith breached the contract because the
 Ezzos' antecedent breach of the contract by withholding payment excused Smith's
 nonperformance of the contract.  
"It
 is a question of law for the court whether the language of a contract is
 ambiguous."  S.C. Dep't of Natural Res. v. Town of McClellanville,
 345 S.C. 617, 623, 550 S.E.2d 299, 302-03 (2001).  "Whether a contract is
 ambiguous is to be determined from the entire contract and not from isolated
 portions of the contract."  Farr v. Duke Power Co., 265 S.C. 356, 362,
 218 S.E.2d 431, 433 (1975); see Hawkins v. Greenwood Dev. Corp.,
 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct. App. 1997) ("A contract is
 ambiguous when it is capable of more than one meaning when viewed objectively
 by a reasonably intelligent person who has examined the context of the entire
 integrated agreement and who is cognizant of the customs, practices, usages,
 and terminology as generally understood in the particular trade or
 business.").   
Construction
 of an ambiguous contract is a question of fact.  Skull Creek Club Ltd.
 P'ship v. Cook & Book, Inc., 313 S.C. 283, 286, 437 S.E.2d 163, 165 (Ct.
 App. 1993).  When an agreement is ambiguous, the court should seek to determine
 the parties' intent.  Ebert v. Ebert, 320 S.C. 331, 338, 465 S.E.2d 121,
 125 (Ct. App. 1995).  "Ambiguous language in a contract should be construed
 liberally and most strongly in favor of the party who did not write or prepare
 the contract and is not responsible for the ambiguity; and any ambiguity in a
 contract, doubt, or uncertainty as to its meaning should be resolved against
 the party who prepared the contract or is responsible for the verbiage."  Myrtle
 Beach Lumber Co. v. Willoughby, 276 S.C. 3, 8, 274 S.E.2d 423, 426 (1981)
 (quoting 17A C.J.S. Contracts § 324).
In
 the present case, the contract included several sections regarding payments. 
 Under the payment schedule, the contract provided for payments to be made in
 advance prior to the start of each phase but allowed the Ezzos to "hold
 back" at their discretion 10% of that amount until the phase was
 completed.  Article 5.1, as amended, provided final payment was to be made
 "when the work has been completed, the contract fully performed, and a
 Certificate of Occupancy has been issued by the local Building Official."

 In
 addition, Article 15.2 provided:
 
 Payments
 may be withheld on account of (1) defective Work not remedied, (2) claims filed
 by third parties, (3) failure of the Contractor to make payments properly to
 Subcontractors or for labor, materials or equipment, (4) reasonable evidence
 that the Work cannot be completed for the unpaid balance of the Contract Sum, .
 . . (7) persistent failure to carry out the Work in accordance with the
 Contract Documents.  
 

Under
 Article 15.3, final payment was not due until the contractor provided the owner
 with a release of all liens or receipts for payment of all labor, materials,
 and equipment for which a lien could be filed, or a bond to indemnify the owner
 from such liens.  This article further provided, "If such lien remains
 unsatisfied after payments are made, the Contractor shall refund to the Owner
 all money that the Owner may be compelled to pay in discharging such lien,
 including all costs and reasonable attorneys' fees."   
The
 contract is ambiguous with regards to the Ezzos' rights to withhold payment. 
 Reading the contract as a whole, there is evidence to support the trial court's
 determination that the Ezzos had the right to withhold the funds.  Although the
 payment schedule limited the "hold back" amount from the advance
 payments to 10% of the amount of that phase, Article 15.2 contains no such
 limitation on the amount the Ezzos could withhold if the circumstances listed
 had occurred.  The Ezzos presented evidence that at the time work stopped on
 the house, Smith had not completed any of the five phases and that some of the
 work completed was defective.  In addition, several contractors and vendors had
 not been paid.  The record contains two mechanic's liens filed against the
 property. Thus, under Articles 15.2 and 15.3, the Ezzos were allowed to
 withhold payment.  Accordingly, there is evidence in the record to support the
 trial court's determination that Smith was in breach of the contract by
 refusing to complete the contract.   
B.  Calculation of
 damages
Smith
 argues the trial court erred in its calculation of the Ezzos' net damages. 
In
 its original Form 4 order, the trial court awarded the Ezzos $11,000.00 in
 damages.  At Smith's request, the court issued an order with specific findings
 of fact and conclusions of law.  In this order, the court held:

 The
 Court finds credible evidence to support finding of damages which were a direct
 consequence of the breach by Smith in the amount of Eleven Thousand Dollars
 ($11,000.00) including specifically the following, to wit: a credit for bricks
 and flooring of $1,000.00; a credit for unused shelving allowance of $1,000.00;
 landscaping and installation of irrigation system in the amount of $8,100.00;
 payments made to subcontractors Ascue Artistic Wood Floors, in the amount of
 $2,980.00, and to Carolina Carpet in the amount of $1,940.00; work done to
 complete exterior construction in the amount of $2,848.00; TruePenny Homes to
 correct and complete the project per contract amount of $4,560.00.  

Smith
 asserts that the sum of the damages listed is $22,428.00 and when Smith is
 credited for the $13,620.00 the Ezzos withheld from the contract amount, the
 net difference is $8,808.00 rather than the $11,000.00 awarded by the court.  We
 find this argument is not preserved because Smith failed to raise the alleged
 inaccuracy by way of post-trial motion.  See Padgett v. Mercado,
 341 S.C. 229, 233, 533 S.E.2d 339, 341 (Ct. App. 2000) ("Any argument
 alleging an inaccuracy or inconsistency in an order must be raised by a
 post-trial motion."). 
C.    Objections to listed damages
Smith
 argues portions of the specific damages awarded are clearly erroneous.  We will
 address each item in turn.  
1.  Landscaping
 damages award.  
Smith
 claims the $8,100.00 award for landscaping reimburses the Ezzos for their
 purchase of additional sod pallets, topsoil and additional irrigation zones
 beyond what was to be allowed under the specifications of the contract.  The
 contract did not set forth a specific monetary allowance for landscaping. 
 Instead, it provided Smith would "[i]nstall irrigation system with a
 minimum 4 zones using system capable of providing 6 zones; Install landscaping,
 allow up to 6 pallets of centipede, 50 bales of pine straw, 40 three gallon
 plants, 4 seven gallon plants."  Although the Ezzos claimed $10,754.00 in
 landscaping damages, the court only awarded them $8,100.00.  
The
 Ezzos purchased fifteen pallets of centipede sod at $250.00 per pallet even
 though the contract allowed for only six pallets.  The trial court's reduction
 in the damages requested could have been from this item.  Smith also disputes
 the amount of topsoil the Ezzos purchased arguing the Ezzos were only entitled
 for reimbursement for the amount of soil needed for the sod allowed under the
 contract.  The contract, however, does not set a limit on the topsoil allowed. 
 The Ezzos presented evidence that Smith did no landscaping and they had to do
 the final grading themselves.  Thus, the soil may have been used for the
 grading.  
Next
 Smith asserts the contract limited the irrigation system to six zones but the
 Ezzos installed a system with fourteen zones at $350.00 a zone.  The contract
 provides for an irrigation system with a minimum of four zones using a system
 capable of providing six zones.  It does not limit the amount to be spent on
 the system.  There is no evidence in the record that the system the Ezzos
 installed was excessive and unnecessary.
We
 therefore find no error in the trial court's award of damages for  landscaping.  
2.  TruePenny
 Homes
Smith
 argues the trial court erred in awarding the Ezzos $4,560.00 for TruePenny
 Homes.  He contends the court should not have awarded the Ezzos $2,235.00 for TruePenny
 to "install footers, block and brick under chimney and tie into existing
 foundation."  
Smith
 and his subcontractor, Wylie Johnson, testified that Johnson installed a
 footing to support the chimney. Johnson acknowledged he did not drill into the
 existing foundation to interlock it with the chimney support. Johnson claimed
 that concrete would be found within twenty-four inches of the surface. 
In
 addition, Smith claims that a contractor the Ezzos hired, Chris Williams, also
 installed a footing for the concrete.  An invoice from Williams shows that he
 charged the Ezzos $950.00 for twenty hours of work, which included "pouring
 concrete around chimney foundation and back porch."  
Mr.
 Ezzo, however, insisted the footing is still not in place.  In addition, David
 DiPietro, from TruePenny Homes, testified that although it was not a code
 violation, there was no footing under the chimney where the fireplace was
 cantilevered, and that was why the additional work is needed. 
The
 trial court found Mr. Ezzo's and DiPietro's testimonies to be credible.  It
 further held:

 I find
 that Mr. Smith was not credible.  Mr. Smith was evasive and avoided answering
 questions directly; he contradicted himself and did not appear to provide
 truthful testimony regarding the footings for the fireplace.  

As
 the finder of fact, it was for the trial court to resolve conflicts in the
 testimony.  See Sherman v. W & B Enters., Inc., 357 S.C. 243,
 250, 592 S.E.2d 307, 310 (Ct. App. 2003) (stating that although there may be
 conflicts in the evidence in the record, our standard of review only allows us
 to look for the existence of evidence and not to weigh its credibility).   
Smith
 asserts the Ezzos should have been bound by the doctrine of collateral estoppel
 due to the prior dismissal of the Ezzos' complaint to the Town of Mount
 Pleasant Building Department.  However, as the trial court's order did not
 address this issue, it is not properly before this court. See Wilder
 Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is
 axiomatic that an issue cannot be raised for the first time on appeal, but must
 have been raised to and ruled upon by the trial judge to be preserved for
 appellate review.").
As
 there is evidence in the record to support the award of damages for work to be
 performed by TruePenny Homes, we find no error in the trial court's decision on
 this item.  
3.  Brick and
 flooring 
Smith
 asserts the trial court erred in awarding the Ezzos $1,000.00 in damages for
 brick and floor credits.  He asserts the Ezzos had previously retained $921.60
 for these same bricks.  We hold this issue is not properly before this court
 because Smith failed to raise it to the trial court in a post-trial motion.  See Padgett, 341 S.C. at 233, 533 S.E.2d at 341 ("Any argument alleging
 an inaccuracy or inconsistency in an order must be raised by a post-trial
 motion.").
4.  Ascue
 Artistic Wood Floors
Smith
 argues the trial court erred in awarding the Ezzos $2,980.00 for the balance
 due for the work of Ascue Artistic Wood Floors.  He asserts the trial court
 incorrectly included $675.00 for a change order that exceeded the original
 contract allowance.  He also claims an additional $135.00 should be deducted
 from the judgment for the 20% mark-up Smith would have made on that payment.  
The
 original contract provided wood floors would be installed on all of the first
 floor, the stair landing, the second-floor hallway, and the hall linen closet. 
 The invoice from Ascue Artistic Wood Floors lists under a change orders section
 a charge for $325.00 for the landing on the steps, $42.00 for an additional
 bundle of red oak flooring, and $308.00 for installing the flooring in a small
 room upstairs.  Mr. Ezzo acknowledged that as a change, they installed hardwood
 flooring in a room upstairs.  However, the original contract provided for wood
 floors for the stair landing.  Therefore, only the installation of wood floors
 in the small room was a part of the change order.  We find the trial court
 incorrectly included $308.00 in its award for the installation of flooring in
 the small room.  However, we hold Smith is not entitled to a mark-up on this
 amount.  "[W]here a contract is not performed, the party who is guilty of
 the first breach is generally the one upon whom all liability for the
 nonperformance rests."  Willms Trucking Co. v. JW Constr. Co., 314
 S.C. 170, 178, 442 S.E.2d 197, 201 (Ct. App. 1994).  We find only $308.00
 should be deducted from the judgment amount.  
5.  Carolina
 Carpet damages
Smith
 argues the correct amount of damages for the payment to Carolina Carpet should
 have been $1,800.00, rather than $1,940.00 awarded by the trial court.  During
 the hearing, the Ezzos stipulated that the correct amount was $1,800.00.  We
 find Smith should have raised this error to the trial court in a post-trial
 motion.  See Padgett, 341 S.C. at 233, 533 S.E.2d at 341
 ("Any argument alleging an inaccuracy or inconsistency in an order must be
 raised by a post-trial motion.").  Accordingly, the issue is not properly
 before this court.  
6.
 Credit for overages on the electrical fixtures and appliance allowance
Smith
 argues the trial court erred in not crediting him $1,656.38 for  Smith's
 out-of-pocket payments for electrical fixtures and appliances that exceeded the
 contract allowances.  The trial court did not explicitly rule on Smith's request
 for credit for these items.  It was Smith's responsibility to seek a ruling on
 this issue by way of a post-trial motion.  See Shealy v. Aiken County,
 341 S.C. 448, 460, 535 S.E.2d 438, 444 (2000) (stating trial court's general
 ruling is insufficient to preserve specific issue for appellate review; when
 trial court does not explicitly rule on argument raised, and post-trial motion is
 filed, appellate court may not address the issue); Noisette v. Ismail,
 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding that when a trial court
 does not explicitly rule on an argument raised, and appellant makes no Rule
 59(e) motion to obtain a ruling, the appellate court may not address the
 issue).  Accordingly, we find no reversible error.  
CONCLUSION
We
 find the trial court erred in including as damages the costs associated with
 the installation of flooring in the room upstairs that was part of a change
 order and deduct $308.00 from the judgment amount.  The order of the trial
 court is otherwise AFFIRMED.  
AFFIRMED
 AS MODIFIED.  
HUFF,
 WILLIAMS, and KONDUROS, JJ., concur.  

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.