**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Sinclair Brown, Jr. and Joetta A. Brown, Respondents,

v.

George B. Corrie, II, Shawna Corrie, Anthony Wayne All, Sandra Rae All, Paul W. Jones, Madelyn W. Jones, Keith A. Murray, Stephanie L.R. Murray, Dollar Bank Federal Savings Bank, The Bank of South Carolina, John Doe and Mary Roe, fictitious names representing all unknown persons who may claim any right, title or interest or lien upon the subject real estate, as well as anyone who may be incompetents, in the military, or under any legal disability, and Richard Roe and Sarah Doe, fictitious names representing all unknown heirs and devisees, Defendants,

Of which George B. Corrie, II and Shawna Corrie are the Appellants.

Appellate Case No. 2024-000430

———————

Appeal From Dorchester County
James E. Chellis, Master-in-Equity

———————

Unpublished Opinion No. 2025-UP-240
Heard April 8, 2025 – Filed July 16, 2025

———————

**AFFIRMED**

———————

Steven L. Smith, of Smith Law Group of the Carolinas LLC, of Summerville, for Appellants.

George Hamlin O'Kelley, III, of Buist Byars & Taylor, LLC, of Mt. Pleasant, for Respondents.

---

**PER CURIAM:** This appeal is about whether the master-in-equity erred in finding the Browns (Respondents) have rights in a pond on their neighbors' property. Any issues relating to the scope of the easement are not before us because the Corries (Appellants) do not challenge the scope of the easement. As a result, we only decide whether the record contains any evidence supporting the existence of an implied easement. We affirm because the plat that was the key feature of the conveyances in question plainly contemplated the subdivided lots accessing the pond.

## STANDARD OF REVIEW

"Declaratory judgment actions are neither legal nor equitable; therefore, the standard of review depends upon the nature of the underlying issues." *S.C. Dep't of Transp. v. Horry County*, 391 S.C. 76, 81, 705 S.E.2d 21, 24 (2011). "The determination of the existence of an easement is a question of fact in a law action and is subject to the any evidence standard of review when tried by a judge without a jury." *Murrells Inlet Corp. v. Ward*, 378 S.C. 225, 231, 662 S.E.2d 452, 454 (Ct. App. 2008); *see also Jowers v. Hornsby*, 292 S.C. 549, 551, 357 S.E.2d 710, 711 (1987) (finding "[t]he decision of the trier of fact as to whether or not an easement exists will be reviewed by this [c]ourt as an action at law"). "In a law case tried by the judge without a jury, this court reviews for errors of law and reviews factual findings only for evidence which reasonably supports the court's findings." *Eldridge v. City of Greenwood*, 331 S.C. 398, 416, 503 S.E.2d 191, 200 (Ct. App. 1998); *see also Sherman v. W & B Enters., Inc.*, 357 S.C. 243, 250, 592 S.E.2d 407, 310 (Ct. App. 2003) (noting "our standard of review only allows us to look for the *existence* of evidence, and not to weigh its credibility").

## ANALYSIS

This dispute has its origins in the subdivision of a 67-acre tract of land. The tract was divided into a roughly 41-acre residual property and four subdivided lots (Lots 1, 2, 3, and 4). The subdivision plat noticeably features a "proposed pond." The plat

depicts the pond as being located mostly on the residual property but also overlapping onto each of the subdivided lots.

The root problem is that the pond was not built exactly as the plat contemplated. Instead of the pond overlapping onto Lot 3 (the lot at issue here), the pond is located entirely on the residual tract, albeit not far from the property line in some places.

The key feature of this case is the fact that the deeds in everyone's chain of title point conspicuously to the plat. Precedent says this sort of reference creates an implied easement. "Although the incorporation by reference in a deed to a plat or map may create an easement by express grant, an easement by reference to a map or pla[t] is not an express easement but rather an easement by implication." 28A C.J.S. *Easements* § 96 (2008). "[A]ccording to the great weight of judicial opinion, the lot purchaser is entitled to the use of all the streets and ways, near or remote, as laid down on the plat by which he purchases." *Blue Ridge Realty Co. v. Williamson*, 247 S.C. 112, 120, 145 S.E.2d 922, 925 (1965) (alteration in original) (quoting *Billings v. McDaniel*, 217 S.C. 261, 265, 60 S.E.2d 592, 593–94 (1950)); *see also Carolina Land Co. v. Bland*, 265 S.C. 98, 106, 217 S.E.2d 16, 20 (1975) ("Generally, where property sold is described in the conveyance with reference to a plat or map on which streets, alleys, parks, and other open areas are shown, an easement therein is created in favor of the grantee." (quoting 25 Am. Jur. 2d *Easements and Licenses* § 26 (1966))).

"As a starting point, we note that the intentions of the parties to the transaction are the overriding focus when examining implied easements." *Inlet Harbour v. S.C. Dep't of Parks, Recreation, and Tourism*, 377 S.C. 86, 92, 659 S.E.2d 151, 154 (2008). "Absent evidence of the seller's intent to the contrary, a conveyance of land that references a map depicting streets conveys to the purchaser, as a matter of law, a private easement by implication with respect to those streets, whether or not there is a dedication to public use." *Newington Plantation Estates Ass'n v. Newington Plantation Estates*, 318 S.C. 362, 365, 458 S.E.2d 36, 38 (1995). Put another way, when a conveyance references a plat depicting certain features, "a presumption of an implied easement arises unless rebutted by a specific, contrary intention by the grantor." *Gooldy v. Storage Ctr.-Platt Springs, LLC*, 422 S.C. 332, 338, 811 S.E.2d 779, 782 (2018); *see also id*. at 339, 811 S.E.2d at 782 ("This presumption is entrenched in South Carolina property law.").

The Corries argue that the testimony of the original grantor, Mrs. Jones, is conclusive evidence that there was no intent to create an easement of any kind or to even create

a pond as part of this subdivision. We respectfully disagree with these arguments for two related reasons.

First, this court has already rejected the same sort of argument in another case. *See Murrells Inlet*, 378 S.C. at 236, 662 S.E.2d at 457 (finding the dedication of an easement was complete when the property was conveyed and that it would be unfair to deny the easement based on "what [the grantor] now argues were her intentions at the time the plat was recorded"). Second, Mrs. Jones' testimony is only one piece of the evidence, and our task in this appeal does not involve weighing which side presented the stronger case. Instead, we ask whether any evidence supports the master's finding, and in performing that inquiry, "our standard of review only allows us to look for the *existence* of evidence, and not to weigh its credibility." *Sherman*, 357 S.C. at 250, 592 S.E.2d at 310.

"[T]he relevant inquiry regarding the parties' intent is limited to the facts and circumstances at the time of [the original conveyance]." *Gooldy*, 422 S.C. at 342, 811 S.E.2d at 784 (emphasis omitted). Here, the facts and circumstances of the original sale of Lot 3 support the finding that the original grantor intended to give the owner of Lot 3 rights in the pond. Mr. Hager—the original surveyor—explained the pond was already under construction when he created the plat and that the boundary of Lot 3 was designed so that the lot would contain some of the pond. It is undisputed that the original grantors, Mr. Jones and the aforementioned Mrs. Jones, signed the Hager plat before it was recorded. The Hager plat plainly delineates a proposed pond. Thus, we find the record contains evidence supporting the master's finding that at the time this property was divided, the parties contemplated Lot 3 would have access to the pond.

The Hager plat features prominently in the chain of title for the properties at issue. Every conveyance of Lot 3 references the Hager plat and the pond. And when Mrs. Jones sold the residual property, she conveyed the entire lot "less and excepting: Lot 1, Lot 2, Lot 3, Lot 4[,] and Lot 5 on th[e] [Hager] plat." We read precedent to make clear that the references to the Hager plat create private rights to access and use the pond as a matter of law. *Outlaw v. Moise*, 222 S.C. 24, 30, 71 S.E.2d 509, 512 (1952) ("The great weight of authority recognizes a distinction between public and private easements arising from subdividing property and the sale of lots according to a plat thereof."); *id.* at 31, 71 S.E.2d at 512 ("[W]here lands are platted and sales are made with reference to the plat, the acts of the owner in themselves merely create private rights in the grantees entitling the grantees to the use of the streets and ways laid down on the plat or referred to in the conveyance."); *see also Newington Plantation*, 318 S.C. at 365, 458 S.E.2d at 38 ("While dedication for public use is

significant to the creation of a public easement, it is irrelevant to the determination whether a private easement exists."); *Vick v. S.C. Dep't of Transp.*, 347 S.C. 470, 478, 556 S.E.2d 693, 697 (Ct. App. 2001) (recognizing a "clearly defined distinction between the rights acquired by the public through dedication effected by platting and sale, and the private rights acquired by the grantees by virtue of the grant or covenant contained in a deed which refers to a plat" (quoting *Outlaw*, 222 S.C. at 31, 71 S.E.2d at 512)); *Blue Ridge*, 247 S.C. at 119–20, 145 S.E.2d at 925 ("The purchasers of lots with reference to the plat of this subdivision acquired every easement, privilege[,] and advantage shown upon said plat, including the right to use all of the streets, near or remote, as laid down on the plat by which the lots were purchased.").

Next, the Corries assert there is no evidence that the pond is necessary for the use and enjoyment of Lot 3 because the pond does not touch the Browns' property. They appear to rely on a theory of strict necessity to argue an implied easement cannot exist unless it is absolutely necessary for the use and enjoyment of the land.

"South Carolina requires only reasonable necessity to imply an easement: while the owner of the servient estate must prove more than convenience, he need not show the easement is absolutely necessary." *Paine Gayle Props., LLC v. CSX Transp., Inc.*, 400 S.C. 568, 590, 753 S.E.2d 528, 540 (Ct. App. 2012) (citation modified). In other words, the "necessity must be actual, real, and reasonable as distinguished from convenient, but need not be absolute and irresistible." *Boyd v. Bellsouth Telegraph Co.*, 369 S.C. 410, 420, 633 S.E.2d 136, 141 (2006).

As previously mentioned, the deed to Lot 3 specifically (albeit implicitly) contemplates Lot 3 having access to the pond. At trial, the Browns characterized the pond as "the selling point" and explained that they used the pond to casually fish with their son and granddaughter. They also testified that the pond was the reason they purchased Lot 3. Similarly, the owners of Lot 4 testified that they purchased their property because the pond was very important to them. This testimony demonstrates that use of the pond was reasonably necessary because the Browns would not be able to fully enjoy Lot 3 without use of the pond. 28A C.J.S. *Easements* § 115 (2025) ("Where a grantor induces purchasers, by use of a plat, to believe that streets, squares, courts, parks, or other open areas shown on the plat will be kept open for their use and benefit, and the purchasers have acted upon such inducement, the grantor is required by common honesty to do that which the grantor represented he or she would do."); *Brasington v. Williams*, 143 S.C. 223, 380, 141 S.E.2d 375, 380 (1927) ("But where the easement is essential to the enjoyment of the land, and the estate cannot be enjoyed without it, the easement . . . is appurtenant to the estate,

and will pass with it to the purchaser." (quoting *Ferguson v. Witsell*, 39 S.C.L. 280, 285 (5 Rich.) (1852))).

But more to the point, easements arise in this situation because of the need to vindicate and protect the plat by which everyone took title, not because of necessity. *Cason v. Gibson*, 217 S.C. 500, 507, 61 S.E.2d 58, 61 (1950). As already noted, "where property sold is described in the conveyance with reference to a plat or map on which streets, alleys, parks, and other open areas are shown, . . . the grantee acquires a right to the way, not merely in front of his property, but also to the full extent of the way as indicated." *Carolina Land*, 265 S.C. at 106, 217 S.E.2d at 20; *see also* 28A C.J.S. *Easements* § 113 (2024) ("When lands are laid off into lots, streets, and alleys, and a map plat thereof is made, all lots sold and conveyed by reference thereto, without reservation, carry with them, as appurtenant thereto, the right to the use of the easement in such streets and alleys necessary to the enjoyment and value of such lots."); *id.* at § 115 ("Thus, where land is sold with reference to a . . . plat showing a park, beach, lake, or other like open area, the purchaser acquires an easement that such area will be used in the manner designated, and an easement over the streets which afford access to such area . . . ." (footnotes omitted)). It would be unjust to grant the Browns title to more than the acreage delineated in their deed, but it would be equally unjust to deny them access to the pond that was the dominant feature of the plat dividing these properties.

Keeping faith with our standard of review, we find the record contains ample evidence supporting the finding that the parties intended the owners of Lot 3 would have access to a portion of the pond. Accordingly, the master's order granting the Browns rights in the pond and ordering the removal of the Corries' fence is

**AFFIRMED.**

**THOMAS, HEWITT, and CURTIS, JJ., concur.**